### MARCUS D. CLAYPOOLE V. MARY M. KING, *et al.*

1. RETROSPECTIVE OPERATION OF CERTAIN STATUTES, *without Impairing Contracts.* Section 613 of the civil code, General Statutes, 753, and section 136, chapter 107, General Statutes, 1062, may operate retrospectively without impairing contracts, or disurbing vested rights, or assuming judicial power, as they simply provide for the reinstatement and payment of certain valid liens on real estate by the persons under duty to discharge the same, for the benefit of the parties who paid them in good faith, and who are equitably entitled to have their moneys refunded.

2. ———— The act of March 6, 1873, amendatory to sections 601 and 608 of article 25, chapter 80 of General Statutes, for the relief of occupying claimants, is constitutional and valid, so far as providing that no writ or process for the eviction of a claimant entitled thereunder to the valuation of his lasting and valuable improvements, shall be issued until the assessment of the valuation of the improvements is paid. In substance, it only requires that the value of the improvements shall be paid, as a condition precedent to the entry and possession of the owner, and does not give the occupying claimant the option to keep the land.

*Error from Leavenworth District Court.*

ACTION brought by *Claypoole*, under § 595 of the code, against *Mary M. King* and twenty-nine other defendants, to recover certain real property situate in Leavenworth county, and in the possession of said defendants. Trial at the November Term, 1874, of the district court, when the court found that the defendants claiming title to the land in dispute, held under an administrator's sale, through the probate court of Leavenworth county, which was void for want of the notice required by § 24, laws of 1855, p. 72, and thereon adjudged the legal title and the right of possession to the land to the plaintiff *Claypoole*, subject however to the rights of Mary M. King, George A. King and Lucinda McCracken, under and by virtue of the provisions of art. 25 of the code of civil procedure, and acts amendatory thereto, relating to occupying claimants, and the right of these defendants to have refunded to them the taxes which they had paid. To reverse such order and judgment, in favor of the three above-named defendants, *Claypoole* brings the case here on error.

*Clough & Wheat,* for plaintiff in error:

The administrator's pretended sale was made long before either said § 613, ch. 80, or § 136, ch. 107 of Gen. Stat., was passed, and therefore we claim those sections are void and inoperative as to this case; because, if they can have force as to this case, they in effect take from plaintiff his property and give it to defendants McCracken and King, to the extent at least of said $2,536.87, and such taxes, with interest. Before the time of the taking effect of those two sections, plaintiff could have brought his action, and obtained judgment for and possession of his property without making such payment. If because of those sections he must pay said $2,536.87, and interest thereon, and taxes, paid before said § 136 took effect, before he can have execution for possession, it follows that in effect the legislature has enacted a law selling justice for a price, and in effect requiring plaintiff to give up a part of his property to obtain that which he had right to according to law without so doing.

The taking of the property of one individual and giving or transferring it to another, either with or without compensation, is not a proper subject-matter of legislation; and any statute attempting to do so, or to confer power on others to do so, is void, irrespective of any constitutional inhibition on such acts; and if said sections 613 and 136 can have force retroactively on said sales, then by mere legislative enactment property is taken from one individual and given to another for his individual use, and rights and liabilities are created, established and determined without any act, consent or previous reason or cause in the law therefor, at the mere caprice of the legislature. That such things cannot be thus accomplished, see the following reasons and authorities, to wit:

The inhibitions of the constitution as to legislation are to be regarded as well when they arise by implication as by expression; and the expression of one thing in the constitution is the exclusion of things not expressed. ( 58 Penn. St.

338.) A statute barring an existing cause of action presently, is void: 2 Kas. 135, 155; 4 Metc. (Ky.) 292; 1 McLean, 158; 5 Pick. 20; 3 Peters, 290; 17 Wis. 573; 13 Mich. 318; 2 Greenl. 294; 7 Ind. 96, 97, 468; 5 Wall. 300; Cooley's Con. Lim. 366, and note 3; Sedgwick on Stat. and Con. Law, 682, 683. It is not within the power of the legislature to create a cause of action out of an existing transaction, for which there was, at the time of its occurrence, no liability. (30 Ala. 127; 24 Me. 520, 530; 37 Ill. 82; 2 McLean, 195; 16 Mass. 86, 215; 45 Ill. 178.) The statute requiring the owner of land to pay redemption money, etc., held void as to sales made previous to the passage of the law. (37 Ill. 82; 5 Minn. 101.) The legislature cannot make the right to trial by jury dependent on giving bond for payment of penalty and costs; and the words, "the law of the land," mean due process of law, etc. (1 Curtis, 311.) A legislature cannot make a contract for parties. (31 Vt. 236-9.) To the same effect as the case last above cited: 21 Penn. St. 147. A statute giving the right to improvements previously made, held void. (2 Gall. 104-141; 24 Me. 530.) A statute giving occupying claimant right to retain the land, or to take pay for the value of the improvements at his election, held void. (Ohio St. 464.) A statute providing that he who paid taxes, etc., under color of title, should be adjudged the owner, held to be an act transferring title, by declaring a forfeiture, etc., and therefore void. (18 Ill. 502; 38 Miss. 424; 13 Mich. 329; 18 Grattan, 100; 5 Minn. 131; 11 Minn. 496, 497.) A statute which made tax deeds conclusive evidence, held void. (23 Ind. 46; 42 Mo. 167; Blackwell, 82, note.) Sections 18 and 20 of the bill of rights are applicable, and said validating clause of the law of 1867 is in conflict therewith.

As applicable to this case, see 3 Ohio St. 470; 4 Hill, 140; 13 N. Y. 392, 393, 433; 40 Ill. 178; 34 Ala. 236, 237, 329; 42 Mo. 162, 166; 3 Nev. 341; 3 Kas. 432, 433; 19 Wend. 659; 3 Bland's Ch. 95; 18 How. 280; 11 id. 437; 14 id. 341; 38 Ala. 513; 10 Yerg. 59; 5 Barb. 482.

A statute is void when it attempts to transfer the property

of one person to another without compensation; it cannot be done by legislative enactment even with compensation. (40 Ill. 175; 27 Mo. 373; 11 Mo. 513; 3 Barb. 47; 3 N. Y. 511; 15 Ill. 124; 34 Ala. 329; 5 Paige, 159; 11 Wend. 148; 51 Barb. 313; 53 Barb. 75; 39 Ill. 110; 25 Mo. 258, 277; 8 Ohio St. 346, 347; 6 How. 545; 24 Me. 520, 530; 38 Ala. 513; 13 Ark. 198; 18 Wend. 56; 28 Tex. 471; 3 Dallas, 386; 9 Am. Law Reg. 156.) Void proceedings cannot be thus either wholly or partially cured. (52 Me. 265, void sheriff's levy; 14 Ill. 223, void tax proceedings; 15 Ill. 218, void tax proceedings; 45 Ill. 178, usury, etc.; 19 Ill. 228, judgment void because without jurisdiction of the person; 2 Greenl. 292, vested rights, etc.; 3 Ohio St. 470; Sedgwick on Stat. and Con. Law, 689, 690, note about case of *Pell v. Ulman.*) Nor can a party be deprived of a vested right by legislative enactment. (30 Ala. 126; 9 Gill. 299; 7 Tex. 364, 365; 2 G. Greene, 26; 7 Johns. 477; 3 Pike, 285; 10 Ired. 496; 45 Ill. 179; Sedgwick on Stat. and Con. Law, 671 to 683, both inclusive.)

When, from any cause, it is too late for a person to change effect of proceedings of a court before then had, &c., statutes giving a right, &c., in relation thereto, held void: 19 Ill. 228; 10 N. Y. 374; 2 D. Chipman, 77; 41 Ala. 153; 18 Penn. St. 112; 21 Wis. 491; 2 Allen, 361; 10 S. & M. (Miss.) 599. The same principle is shown by those cases which establish the proposition that where one has held property until the statute of limitation has run in his favor, a repeal of such statute does not revive the cause of action for the property. (11 Wis. 371, 432 and 442, and cases there cited; 8 Blackf. 506; 2 Ind. 647; 3 Littell, 137; Angell on Limitations, 19, note; 13 Wis. 245; 1 Eng. 495, 496.)

The judgment of the law (the pronouncing of which is a judicial act), that the sales relied on were, when made, and still are, void, would be reversed by the legislature if the aforesaid sections 613 and 136 are allowed to have effect in this case. They involve the assumption of power by the legislature to define the *status* of cases in court, to hear them

*ex parte,* and to decide them on prejudice, passion and rumor, and to control the judicial judgment in its application of legal principles to cases. Such a power is certainly an invasion of the province of the judiciary, and cannot consistently with the constitution of this state, which has vested the judges of the courts with that power, be exercised. The legislature cannot perform an act between parties, and decisive of a matter in controversy. (41 Ala. 157; 4 R. I. 324; 1 N. H. 199; 3 Greenl. 326; 4 Greenl. 140; 2 D. Chipman, 77; 11 Mass. 396; 21 Wis. 491; 38 Ala. 513; 7 Johns. 496; 46 Ill. 404; 17 Mo. 590; 9 B. Monr. 308; 10 Yerg. 59.)

It was not within the power of the legislature to pass an act in effect confiscating the property of defendant in error. (11 Minn. 496, 497; 13 Mich. 329; 38 Miss. 424; 18 Ill. 502; 18 Grattan, 100.)

And further, in this connection, we claim that it was erroneous for the court to make the said orders by the plaintiff complained of, because, as we understand §§ 1 and 2, pp. 203, 204, laws 1873, (which are now and have been ever since some time before said orders were made, §§ 601 and 608 of the code,) the right of election, whether to take the land or pay the money, given by the former §§ 601 and 608 of the code, is by those §§ 1 and 2 taken away; and the occupying claimants, McCracken and the Kings, if those two sections are valid and operative as to this case, have a right to have judgment against plaintiff for the balance and amounts referred to in those sections, and payment thereof before eviction can be had, and the orders complained of contemplated such proceedings on behalf of defendants. We claim that the attempt of the legislature, by §§ 1 and 2, to give the occupying claimant an absolute right to judgment, payment, etc., of the value of his improvements, etc., is unconstitutional and void as to any case, and particularly as to this case—a suit pending before those sections were enacted—and also because, if applicable to this case, of attempting to give a right to money by an act of the legislature in favor of one private individual against another, where no previous

liability existed because of matters before the enactment of the law.

The constitution of Kansas is, as we believe, understood to have been largely taken and adopted from the constitution of Ohio, in force when the case of *McCoy v. Grandy*, 3 Ohio St. 463 and 471, was decided, and therefore on the principle that when a law is adopted by one state from the laws of another, the presumption of law is that the construction before given by the courts of the state from whence the law is adopted, is also adopted with the law and as part of it.

*E. Stillings*, and *Wm. Dill*, for defendants in error McCracken and King:

The findings in this case show that the land was sold for the payment of the debts of the deceased, under whom plaintiff claims title, and that the money was applied to and used in the payment of the debts of the deceased. One of these debts was a balance due for purchase -money on the land in dispute, which was paid by the administrator, and the deed delivered after the decease of the ancestor of the plaintiff, without which transaction the former owner would still have held the land. At the time of the decease of the plaintiff's ancestor, the statutes of the territory providing for descents and distributions made the same in terms, subject to the debts of the deceased (ch. 60, Statutes 1855, p. 306); a provision which has ever since continued a part of the law of the territory and the state.

The debts of the deceased were a charge on this land. Their payment with the money which the administrator received from the purchase, at what was supposed to be a valid sale of this land, created a clear equity in favor of such purchaser, and a right to be subrogated to the position of the creditors who received this money. (1 Leading Cases in Equity, 155.)

That the statute which is assailed by the plaintiff, which is intended to keep alive this charge against the estate of the deceased, in favor of one whose money has been applied in

payment of such debts, on account of a sale which turns out to be irregular and therefore void or voidable, is an eminently just one, and one which requires of the heir seeking to recover the estate nothing but what good conscience demands of him, we think will not be for one moment questioned. That such a statute will be sustained by the courts under our constitution is so clearly demonstrated by Mr. Cooley, in his work on Constitutional Limitations, (page 369,) that we prefer to submit his reasoning and quotation of authorities to any argument we might make. The same reasoning and principles apply to the matter of taxes paid, which were till paid a charge and lien on the land.

It is a sufficient answer to the argument of counsel as to the effect of the statute of 1873, to say that, so far as the question is made on the matters above referred to, the theory advanced is too far-fetched to need reply; and so far as it is applied to the improvements, section 610 of the law of 1868, which is not in terms repealed, is still in force, unless the statute of 1873 is a valid law, and by virtue of its conflicting provisions repeals section 610 of the law of 1868. See concluding part of decision of supreme court of Ohio, in 3 Ohio St., referred to by plaintiff.

The reasoning in his brief is not in accordance with the meaning or spirit of the occupying-claimant law. The proposition that an estate could be burdened down with improvements, so as to disable the owner from reclaiming it, cannot be sustained. The improvements must be made in good faith, and if made for such a purpose it would not be good faith, and would not come within the provisions of the law. It is their value to the property which is to be estimated, and if made as provided by the law, such a castle in the air as counsel erects to knock down, can never exist except in his imagination. It will be time enough when such a judgment shall be rendered, to contest its validity; and we suppose this young man, who has such tender compassion for those whose money paid his father's debts, would not want to get improvements made on the land for nothing. But why is the

law of 1873 not valid? Both parties have claims. There is no difference under our law between legal and equitable claims. When one invokes the aid of a court to enforce his claims in regard to specified property, whether the claims be legal or equitable, why should not the other party have the aid of the powers of the court to enforce his claims, whether legal or equitable? The courts of other states have for almost time immemorial recognized the validity of statutes securing the benefit of the occupying-claimant law. The court of this state admits the same thing. See *Stebbins v. Guthrie*, 4 Kas. 353. If both parties have rights respecting the same subject of action, do not our laws provide ample means to have them all adjusted and settled in one litigation? That the claims of both parties are claims to be asserted and enforced, we refer to 4 Kas. 353 and 368. That the rights of the parties should be settled and finally determined in one suit, is a part of the laws of Kansas, for which no reference is needed, and to the justice of which every honest principle tends.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by the plaintiff in error, under section 595 of the code, to recover certain real property in the possession of the defendants in error. Upon the second trial the court found that the defendants claiming title to the land in controversy held under an administrator's sale through the probate court of Leavenworth county, which was void for want of the notice required by § 24, laws 1855, page 72, and thereon adjudged the legal title and right of possession to the land to the plaintiff, subject to the rights of certain defendants under and by virtue of the provisions of article 25 of the code, relating to occupying claimants, and the right of these defendants to have refunded the taxes paid by them.

The so-called administrator's sale took place between September 22d, 1859, and December 21st, 1859, and the deed was executed Dec. 31st, 1859. This action was commenced

March 1st, 1873. The judgment was rendered December 12th, 1874.

Counsel for plaintiff contend, in the first place, that as § 136, Gen. Stat. 1062, relating to the repayment of taxes where lands are in controversy, only took effect March 15th, 1868, and § 613, Gen. Stat. 753, concerning the refunding of the purchase money in certain cases where lands are sold by an administrator, etc., only took effect October 31st, 1868, these sections are void and inoperative as to this case. Their argument is, that as the plaintiff had over eight years after the administrator's sale to sue for and recover the land, with-out refunding the purchase money paid the administrator, and without the repayment of the taxes, said §§ 136 and 613 are violative of §§ 18 and 20 of the bill of rights of our state constitution, for if applicable in this case, they allege that they in effect take from the plaintiff his property and give it to certain of the defendants, to the extent, at least, of the amount of the purchase money — some $2,536.87 and the taxes, with interest. Again, counsel further argue that if said sections can have force retroactively, then by mere legislative enactment property is taken from one individual and given to another for his individual use, and rights and liabilities are created, established and determined without any act, consent or previous reason or cause in the law therefor, at the mere caprice of the legislature. The argument thus presented is ingenious and able, and at first blush plausible, but ignores the relation which the claims to be refunded bear to the estate inherited by the plaintiff, and the equitable rights of such defendants.

At the time of the decease of Jeremiah H. Claypoole, the ancestor of plaintiff, the statutes of the territory providing for descents and distributions, made the debts of said deceased a charge on this land. One of these debts was a balance due for purchase money on the land in dispute. The land was sold for the payment of the debts, including the claim for purchase money overdue. This money was applied in the payment of these debts, and deed obtained for the

land. Thus, with the $2,536.87, the land was discharged from the lien of the debts of the deceased, and the final payment of the purchase price made; equitably, therefore, it is clear that if the sale was void the heir ought not to obtain the property in any better condition than it was left by his ancestor. It was then burdened with debts and unpaid purchase money. The judgment requires this to be paid. It has been frequently held that where a title in equity was such that a court of chancery ought to interfere and decree a good legal title, it was within the power of the legislature to confirm the deed. Section 613 is an exercise of no greater power. By its adoption the purchaser, at what was supposed to be a valid sale, has the right, whether the sale was prior to or after the passage of the section, to be subrogated to the position of the creditors, who received the purchase money to be applied on their claims. It comes in aid of persons who have acted in good faith, and whose acts have been beneficial, not injurious, to the rights of the heir. The law does not require the plaintiff to give up any part of the property he inherited; it simply gives it to him as inherited. The law does not create property in the defendants, but cures defects existing at its passage in the interest of purchasers at executors', administrators' and judicial sales. It very properly demands that where such sales are decreed invalid, the property shall not be taken from their possession, obtained under the sale by the person originally liable, or one standing in his shoes, until the purchase money is refunded: in other words, it reinstates the lien on the land in favor of one whose money has been applied to the discharge of such lien under a sale which turns out to be irregular, and therefore void. In being allowed to operate retrospectively, it does not impair any contract or disturb any vested right. It cannot therefore be said to violate any provision of our bill of rights, nor to assume judicial power. It does not transfer property by its own act, but says in substance to the heir, you shall act honestly. The same rule is applicable to § 136, which provides for the return of the taxes, because they all

were an original charge and lien on the land till paid by defendants.

It is further insisted that sections one and two, ch. 102, laws 1873, are unconstitutional and void as to any case; and *McCoy v. Grandy*, 3 Ohio St. 463, 471, is cited as decisive. The act of March 22d, 1849, of Ohio, (referred to in the latter case,) is widely different from the act of our legislature of March 6th, 1873. The former act gave to the occupying claimant the option either to take the land by paying a sum of money equal to the value of the land in a state of nature, or to receive payment for his improvements. Our statute of 1873 requires the value of all lasting and valuable improvements to be paid by the owner of the land as a condition precedent to the entry. It does not give any option to the claimant to keep the land, and the provision for judgment in his behalf for the improvements must be construed merely to prevent any writ or process from issuing for his eviction, until the assessment or judgment for improvements is paid. No personal judgment can be entered against the owner of the land, capable of being enforced by execution or other process. With this construction, the amendatory act of 1873 is constitutional. It rests upon a strong equity in favor of a compensation for improvements which have augmented the value of the land and inured to the benefit of the owner, and such owner takes the land, but pays for such improvements. Under our statute, the owner is not compelled to give up his land, but merely to recompense the occupying claimant the amount which its value has been increased by means of the improvements. This is really the adoption of the well-settled principle in equity, of allowing a *bona fide* occupant the value of his improvements on real estate. (*Guthrie v. Stebbins*, 4 Kas. 353.)

The order and judgment of the district court will be affirmed.

All the Justices concurring.