## HENRY MORRELL v. EDWARD INGLE, *et al.*

1. SHERIFF'S DEED, *Invalid.* Before April, 1861, the county of Osage was organized, and an execution then issued upon a judgment in Shawnee county directed to the sheriff of Shawnee county, gave the latter no authority to levy upon and sell real estate situated in Osage county. And where, notwithstanding such want of authority, the sheriff did so levy and sell, his deed, made without any confirmation of the sale, was invalid, and inoperative to transfer title.

2. OFFICIAL POWERS, *Extent of.* In the absence of express provisions to the contrary, the powers of an officer are limited to the territory of which he is an officer.

3. STATUTE OF LIMITATIONS; *Absence from the State.* In an action by a judgment debtor to recover real estate sold upon execution, where the defense is a sheriff's deed of record for over five years, and the consequent bar of the statute of limitations, the absence of the defendant from the state will prevent the running of the statute as in other cases.

4. EJECTMENT; *Insufficient Defense.* Where an action is brought against husband and wife to recover the possession of premises claimed by them as a homestead, and he sets up in defense a sheriff's deed to himself of record more than five years, and it is adjudged that by reason of his absence from the state and the invalidity of the deed, the defense must fail, neither he nor she can sustain a defense by reason of such deed and her presence in the state and occupation of the premises for more than five and less than fifteen years. The homestead right does not enable them in such case to unite into one good defense two separately insufficient defenses.

### *Error from Osage District Court.*

EJECTMENT, brought by *Morrell*, against *Edward Ingle* and wife, to recover the possession of certain real estate situate in Osage county. Trial at the April Term, 1877, of the district court, and verdict and judgment for defendants. The plaintiff brings the case to this court.

*James Rogers*, and *E. M. Sanford*, for plaintiff in error.

*Ellis Lewis*, for defendants in error.

The opinion of the court was delivered by

BREWER, J.: The questions in this case are as to the validity of a sheriff's deed, and upon the statute of limitations.

The action was ejectment, brought by the judgment debtor against a grantee of the purchaser at a sheriff's sale. The deed is challenged upon three grounds: first, that the sale was made by the sheriff of the wrong county; second, that there was no proper and sufficient advertisement of the sale; third, that the sale was never confirmed.

Of these in their order. In reference to the first ground, it appears that the judgment upon which the execution was issued was rendered November 16, 1858, in the district court of Shawnee county. On April 16, 1861, execution thereon was issued to the sheriff of Shawnee county, by whom the land was sold. At the time of the judgment and the sale, the land was situate in Osage county, the name of which at first was Weller county. The right of the sheriff of Shawnee county to levy upon and sell lands in Osage county is denied. At the date of the judgment the boundaries of Weller county were defined, but the county was without organization, and attached to Shawnee county for judicial purposes. At that time service of process, whether mesne or final, within the limits of Weller county by the sheriff of Shawnee county, was unquestionably right. (Laws 1855, ch. 30, §§ 12, 34.) Prior to the issue of the execution, however, Osage county had become organized. (Laws 1859, ch. 100; Laws 1860, ch. 41.)

The evidence shows the meeting of the board of county commissioners and the canvass of the votes for the various county officers. True, as counsel says, the evidence does not show that the officers, other than the commissioners and clerk, ever qualified or acted. But the existence of the county organization did not depend upon the whim of any single county officer. The presumption is, that where an officer is elected he serves, especially where the office is one of emolument. But suppose the party declared elected to the office of sheriff failed or refused to serve: such failure or refusal did not prevent the organization of the county. It was like any other case of official vacancy, to be filled in the manner appointed. The organization of the county did not,

3 — 23 KAS.

Morrell v. Ingle.

by these statutes, depend on the qualification of certain offi-
cers, as in the case of *The State v. Ruth*, 21 Kas. 583.   More
than that, the act of 1860, above cited, is entitled "An act
perfecting the organization of Osage county," and in the
eleventh section that county officers were acting, is plainly
recognized, for it provides that those acting shall hold only
until their successors are elected at the special election or-
dered.   We think it may be taken as a fact established, that
the county was an organized county prior to the issue of the
execution.

Whether there was, prior to the sale, any provision for
transferring this judgment from Shawnee to Osage county,
may be doubted.   The sections to which we are referred by
counsel as granting such provision are not entirely clear.
Sec. 5, ch. 100, Laws of 1859, requires the county clerk of
Osage county, who was then *ex-officio* clerk of the district
court, to obtain from the clerk of Shawnee county a
"transcript of all deeds, mortgages and liens of every
description upon real and personal property lying in Osage
county, together with all cases pending in the courts of
Shawnee county, and put the same upon record in his office;
.   .   .   and all said cases now pending as aforesaid in the
courts of Shawnee county shall be finally prosecuted to judg-
ment in the courts of the county of Osage."   In reference
to this section it may be remarked that the action was already
in judgment, and not pending; that a judgment was only a
lien in the county in which it was rendered.   (Laws of 1859,
p. 148, § 433.)   And it does not appear that any execution
had been issued and levied prior to the one upon which sale
was made.   Sec. 2, ch. 41, Laws of 1860, provides simply
for the transfer of "all papers and certified transcripts of all
the records in all cases therein pending," and that "said
cases shall be prosecuted to completion as though originally
commenced in Osage county."   Sections 2 and 10, ch. 23,
Laws of 1861, which went into effect May 22, 1861, are as
follows:

"SEC. 2. The county of Osage is hereby detached from

the county of Shawnee, and the clerk of the district court in said county of Shawnee shall make out and deliver to the clerk of the district court for said county of Osage, a full and complete transcript of the records of all process and proceedings pending, and· of cases tried and determined in the district court of said county between parties and against defendants resident in said county of Osage, and deliver to the clerk of said county the same, together with all papers on file in his office belonging to or pertaining to such cause, which transfer shall be indorsed and verified on the court record of the said district court of the said county of Shawnee, by the person receiving the same.   .   .   .   Upon the receipt of such transcript and papers the said clerk of the county of Osage shall file such papers and enter at large such transcript upon the court record of his county, and thereupon such papers and records and the causes to which they pertain shall be treated in all respects, and have the same legal force and effect, as if such papers had been orig- inally filed and said causes had been originally commenced in said county."

"Sec. 10.  When a county is attached to another for ju- dicial purposes, the jurisdiction of the county to which it is attached shall be the same as if it formed a part thereof; and when the county attached has an organization and officers of its own, all writs, subpenas and process of whatever kind shall be directed to and served by the sheriff, or his deputy, of said county attached."

Now it nowhere appears that either plaintiff or defendant in that original action was a resident of Osage county, nor is there any evidence when the transfer provided for in §2 was in fact made, or that any transfer of this judgment was ever attempted to be made.  We therefore think it may be con- sidered as established by the testimony that this judgment remained, at the dates of the execution and sale, a valid ·judgment of the district court of Shawnee county, with power in that court to enforce it by execution to any county in the state; and also, that the county of Osage was an organized county.   Under those circumstances, had the sheriff of Shaw- nee county power to execute the process issued to him by a levy and sale of the real estate situated in the county of Osage?   We think not.   A sheriff is an officer of the county,

and in the absence of express provision his powers do not go beyond the territorial limits of his county. It is not necessary to rest this lack of power in the sheriff of Shawnee county upon the language of § 10, just quoted. It grows out of the general doctrine that the powers of any officer are limited to the territory of which he is an officer. He who affirms the existence of powers beyond such limits must show a grant of such powers; it is not enough to show that there is no express denial of them.

So far as the second point is concerned, it is enough to say that probably there is a clerical mistake in the deed, which will be made clear upon the production of the execution and return.

As to the third point, the deed recites a confirmation, but the testimony of the clerk of the district court is, that there is no order of confirmation on the record. The deed by the statute is evidence "until the contrary be proved;" but when the records of the court contain no order of confirmation, the contrary is proved. And surely an officer who attempts to sell a tract of land which he has no power to sell, cannot by a deed reciting an order of confirmation, which was never in fact made, validate a void sale. We conclude, therefore, that the deed offered in evidence was inoperative as a conveyance of the title away from the judgment debtor.

There remains the other question, that arising on the statute of limitations. The deed was of record more than five years prior to the commencement of the action, but the defendant had not been present in the state for that length of time. Upon this counsel contends that the question of presence in or absence from the state has no effect upon the operation of the statute, so far as it is based upon the record of a deed. We cannot concur in this view. The arrangement of the sections of the statute forbids any such construction. The various sections prescribing periods of limitation in actions real and personal, and including in the former cases in which the record of a deed is material, are grouped together, and then follow exceptions to those general clauses

of limitation. To hold that those exceptions do not apply to all the clauses of limitation to which they are in their nature applicable, is to engraft upon the statute something not placed there by the legislature. One of those exceptions relates to the disability of the plaintiff. By what authority shall the courts say that this applies to ordinary actions for the recovery of real estate, but not to those brought by a judgment debtor against one holding under a recorded sheriff's deed? There is nothing in the language or in the arrangement to indicate any intention in the legislature to make the exception applicable in the one case and not in the other. It certainly can apply in both cases. It would be legislating, for us to distinguish. Just so where there is a disability on the part of the defendant. If his situation is such that he may not invoke the protection of the statute in the one case, it is for the legislature alone to say that when similarly situated he may invoke it in any other case. That the defendant was absent from the state his own testimony shows; that in an ordinary action to recover the possession of real estate, such absence would prevent the running of the statute, is conceded, and we see no reason to doubt its efficacy in the present case. We see no force in the argument that because the cause of action accrues from the taking of possession, and not from the recording of the deed, therefore there is no exception to the running of the statute after the record. The truth is, the record of the deed shortens the general statute, and the fact that that is shortened in certain cases is no reason why there should be no exception in those cases. We think, therefore, that under the testimony the defendant Edward Ingle's plea of the statute of limitations was unavailing. But counsel further contends that if Edward Ingle's absence from the state avoids this plea, still the evidence shows that his wife and children resided upon the land continuously for over five years before the commencement of this action, that it was their homestead, and she is joined as defendant with him in this action. Hence, she can plead the five-year statute, and, being a homestead,

her possession inures to his benefit, and neither can be removed. This is ingenious, and if it could be sustained would suggest many curious inquiries concerning the potency of the homestead provisions. The fallacy is here: she has, independent of her husband, no right save that of occupancy, and that must exist fifteen years. Mere possession, even though that possession be as a homestead, does not bar the true owner unless continued for fifteen years. She does not hold under the sheriff's deed, but simply as the wife of him who does. Although the homestead exists, and she may assert and defend her homestead rights, yet when she does, she asserts her own rights, and not his. She may not unite his title and her occupancy and found thereon a right which neither his title nor her occupancy alone would give. Of course, if either his title or her occupancy alone would bar the plaintiff, such protection inures to the benefit of both, but the right which she must assert independent of his title must be one perfect in itself.

The judgment must be reversed, and the case remanded with instructions to grant a new trial. Of course if on such trial defendants fail, they can avail themselves of the rights recognized in *Claypoole v. King*, 21 Kas. 602.

All the Justices concurring.