Amelia McIntyre, Legal Counsel Kansas Department of Wildlife and Parks 900 S.W. Jackson, Suite 502 Topeka, Kansas 66612
Dear Ms. McIntyre:
As legal counsel for the Kansas department of wildlife and parks, you pose two related questions which pertain to the territorial limits of a department conservation officer's law enforcement authority. You first ask whether conservation officers employed by the department have statutory authority based upon K.S.A. 32-808 to enforce traffic laws or infractions, or other non-wildlife laws, rules and regulations of the state of Kansas, on lands not controlled by the department.
You indicate that your questions are prompted by several unreported Kansas district court decisions granting defense motions to dismiss driving under the influence charges because the arrests were made by department conservation officers outside department controlled lands.
 Conservation Officers' Authority to Arrest
In order to reach your questions, a partial review of the legislative history concerning wildlife and parks department conservation officers' arrest authority is in order. In 1985 the director (of the then Kansas fish and game commission) was mandated to organize a wildlife conservation service and to employ wildlife conservation officers and deputy conservation officers. (From 1921 until 1939 such persons were known as game wardens, deputy wardens and county wardens under the authority of the governor. From 1939 until 1943 such persons were known as county game protectors and local preserve protectors under the authority of the forestry, fish and game commission. From 1943 until 1982 such persons were known as state game protectors under the authority of the forestry, fish and game commission. From 1982 until 1985 such persons were known as state game protectors under the authority of the fish and game commission.) These wildlife conservation officers had the power and authority to enforce all the laws of the state relating to state parks, recreational and game management areas, game, fish, furbearers, wild birds and wild animals and the rules and regulations of the Kansas fish and game commission relative thereto. L. 1985, ch. 252, § 1. A separate procedural statute (which was not amended in 1985) authorized state game protectors and preserve protectors to "arrest, at any place in the state of Kansas" anyone who violated any of the forestry, fish and game laws of the state, or rules or regulations of the forestry, fish and game commission. L. 1976, ch. 145, § 156.
L. 1985, ch. 252, § 1 also provided that upon request, properly trained wildlife conservation officers were authorized to assist any law enforcement officer in making an arrest. In addition the wildlife conservation officers were granted the power of arrest when the conservation officer had (1) an arrest warrant, (2) probable cause to believe a person was committing or had committed a felony, (3) probable cause to believe a person was committing or had committed a misdemeanor under the circumstances specified in K.S.A. 22-2401 or (4) viewed the commission of a felony or misdemeanor. A wildlife conservation officer who made an arrest without the presence of a law enforcement officer was required to deliver the person arrested to the sheriff or chief of police in the jurisdiction where the arrest was made. L. 1985, ch. 252, § 1. The territorial limits of this grant of arrest authority were not specified.
Beginning in 1977 the director of the state park and resources authority was mandated to appoint park managers and rangers "to maintain order within the state parks." L. 1977, ch. 270, § 1. These managers and rangers were authorized to "enforce all the laws of the state" as well as the park and resource authority rules and regulations. L. 1977, ch. 270, § 1. Read together these two statutes authorized park managers and rangers to enforce traffic violations and criminal laws within state parks.
In 1989 the Kansas department of fish and game was consolidated with the state park and resources authority to form the Kansas department of wildlife and parks. At that time the arrest authority of wildlife and parks conservation officers (formerly wildlife conservation officers and park and resources managers and rangers) was altered to reflect modification necessitated by the consolidation, i.e. to enforce all thewildlife and park laws of the state. L. 1989, ch. 118, § 10. The procedural statute, (L. 1976, ch. 145, § 156) was also amended, authorizing the wildlife conservation officers "to arrest, at any place in the state of Kansas, any person or persons found violating any of the wildlife and parks laws of this state, or the rules and regulations adopted thereunder." L. 1989, ch. 118, § 134.
Additional arrest authority of the wildlife and parks conservation officers for non-wildlife and parks laws mirrored that of the former wildlife conservation officers by identifying the same four circumstances in which a conservation officer could make an arrest, but again without specification of the territorial limits of their arrest authority. L. 1989, ch. 118, § 10. The specific power, formerly given park managers and rangers, to enforce all the laws of the state within state parks was not included within the consolidation statutes.
In 1993 the enforcement statute (L. 1989, ch. 118, § 10) was amended, authorizing conservation officers to enforce not only all the wildlife and parks laws and regulations but also "other laws of the state, including but not limited to chapter 8 of the Kansas Statutes Annotated." L. 1993, ch. 150, § 1, now K.S.A. 32-808(b)(1). Chapter 8 of the Kansas Statutes Annotated is titled "Automobiles and Other Vehicles" and includes a section on serious traffic offenses such as reckless driving and driving under the influence of alcohol or drugs.
In addition, the 1993 amendment deleted the former four circumstances in which a conservation officer could make an arrest and replaced them with the following:
 "Such officers shall also have the powers of arrest set forth in K.S.A. 22-2401, and amendments thereto, and are empowered to make arrests, pursuant to K.S.A. 22-3307, and amendments thereto, as required by any policy adopted by the secretary." L. 1993, ch. 150, § 1, now K.S.A. 32-808(b)(1).
K.S.A. 22-2401 sets forth the circumstances in which a law enforcement officer may make an arrest. K.S.A. 22-3307 requires all Kansas law enforcement agencies to adopt written policies regarding domestic violence calls. Thus K.S.A. 32-808(b)(1) now clearly specifies when a conservation officer may make an arrest. Your questions, however, relate to where a conservation officer may make an arrest.
 Territorial Limits of Conservation Officer's Authority to Arrest
The issue of where a conservation officer may exercise arrest authority is statutorily addressed only partially. As indicated above, in relation to persons violating wildlife and parks laws and regulations, conservation officers are authorized to arrest "at any place in the state of Kansas." K.S.A. 32-1048. However, this statute, as with its predecessor versions, is silent regarding the territorial limits of a conservation officer's power to arrest persons for violation of other than wildlife and parks laws and regulations. Are conservation officers authorized to arrest persons for violation of "other laws of the state" at any place in Kansas or only on department controlled or managed lands and waters?
In relation to the jurisdiction of law enforcement officers, the territorial limits and exceptions to those limits are statutorily specified. (See K.S.A. 22-2401a, as amended by L. 1996, ch. 224, § 8 regarding law enforcement officers employed by consolidated county law enforcement agencies, departments or any city, sheriffs and their deputies, university police officers, law enforcement officers of any jurisdiction within Johnson or Sedgwick county; K.S.A. 74-2108 regarding highway patrol; K.S.A. 1995 Supp. 75-4503 regarding capitol area security patrol; K.S.A. 19-2858 regarding deputized employees for enforcement of county park regulations; K.S.A. 75-712 regarding members of the Kansas bureau of investigation.)
Given the absence of a statute which specifies the territorial limits of a wildlife conservation officer's authority to arrest for violation of "other laws of the state," we must reach a conclusion based on general principles derived from what little applicable case law exists. We are thus led through the annals of Kansas jurisprudence to the case ofMorrell v. Ingle, 23 Kan. 32 (1879) which may be cited for the general doctrine that:
 "[t]he powers of any officer are limited to the territory of which he is an officer. He who affirms the existence of powers beyond such limits must show a grant of such powers; it is not enough to show that there is no express denial of them." 23 Kan at 36.
This general principle expressed in Morrell was cited and followed inTorson v. Baehni, 134 Kan. 186 (1931) and in Dunfield v. School District72 in Coffey County, 138 Kan. 800 (1934). A more contemporary case,State v. Shienle, 218 Kan. 637 (1976) expresses essentially the same principle in holding that a police officer acting within his official capacity cannot make an arrest outside the jurisdiction from which his authority is derived. Shienle was favorably cited in the even more recent case of State v. Miller, 257 Kan. 844 (1995).
The territorial extent of the authority of wildlife conservation officers to arrest persons found violating wildlife and parks laws is state-wide. In contrast, the territorial authority of wildlife conservation officers to arrest person found violating other laws of the state is not statutorily specified. Given such an absence, a wildlife conservation officer's arrest authority for other laws of the state must be understood to be limited to the territories of which he is an officer, i.e. the territories operated and controlled by the secretary of wildlife and parks. The territories which the secretary of wildlife and parks is authorized to "operate and control" are the "state parks, state lakes, recreational grounds, wildlife areas and sanctuaries, fish hatcheries, natural areas, historic sites and other lands, waters and facilities under the jurisdiction and control of the secretary. . . ." K.S.A. 32-807(h).
The current version of the conservation officers enforcement statute, K.S.A. 32-808(b)(1), was introduced as 1993 house bill no. 2488. Minutes of the house judiciary committee on February 25, 1993 reflect chairman O'Neal's explanation "that this bill was filed to correct an oversight in the reorganization of Wildlife and Parks which took away conservation officers' law enforcement powers." As seen from the discussion above, the only power "taken away" in the consolidation process was the former authority of park managers and rangers to enforce all the laws of the state within state parks. Testimony of conferees who appeared before the House judiciary subcommittee bolster our conclusion and validate that this was the specific arrest power which 1993 H.B. 2488 was designed to replace:
 "Existing law does not allow for the enforcement of traffic infractions on Wildlife and Parks managed properties. . . . Total enforcement of laws on department managed lands is necessary to provide public safety. . . . Arrests for crimes other than Chapter 32 violations on department managed lands must be turned over to other law enforcement organizations under current law. . . . The Department is charged with management of certain lands and waters for the public use and enjoyment. Public safety while using and enjoying those areas must be a primary concern of the Department." (Emphasis added.) Testimony presented to House judiciary subcommittee by Kansas department of wildlife and parks, February 23, 1993 and to Senate committee on energy and natural resources, March 19, 1993.
 "The recodification process overlooked an important point of law which is needed by the Kansas Department of Wildlife and Parks. Traffic crimes had been reclassified as `infractions' prior to 1989. This meant traffic enforcement on state parks and wildlife areas could not longer be conducted since the Wildlife Conservation Officers only had authority to enforce violations of criminal law, not traffic infractions. This has caused a safety problem for the public who use these areas and placed an undo [sic] burden on other law enforcement agencies. Other law enforcement agencies such as county sheriff departments and the Kansas Highway Patrol have been responsible for the traffic enforcement on the parks and wildlife areas
because Conservation Officers no longer had legal authority for this responsibility." (Emphasis added.) Testimony presented to House judiciary subcommittee by Kansas peace officers' association, February 23, 1993 and to Senate committee on energy and natural resources, March 19, 1993.
Additionally, minutes of the senate committee on energy and natural resources for March 24, 1993, which indicate that there were "questions concerning the enforcement of criminal law and it was noted this would be only on park land" support our conclusion.
 Kansas Department of Wildlife and Parks Policy No. E-6
On April 29, 1993 Theodore D. Ensley, then secretary of the Kansas department of wildlife and parks issued Policy No. E-6 on the subject of traffic enforcement which in pertinent part provided:
 "Traffic laws and infractions may be enforced on Department managed properties. Such enforcement shall be a duty of all department law enforcement personnel who are certified through the Kansas Law Enforcement Training Center.
 Department Law Enforcement Personnel shall not enforce traffic laws or infractions on non-department lands, except: when there is a clear and present danger to life."
You next ask whether this policy limits the broader statutory authority otherwise vested in conservation officers. As seen from the above discussion and conclusion, in our opinion department conservation officers do not have any authority to enforce traffic infractions on non-department lands. As with other law enforcement officers, once outside the territorial limits of their jurisdiction, absent application of the fresh pursuit doctrine or a call for assistance from another officer, such law enforcement officer's authority to arrest is that of a private citizen. His actions will be considered lawful if the circumstances attending would authorize a private person to make the arrest. State v. Shienle, 218 Kan. 637 (1976). K.S.A. 22-2403, as amended by L. 1996, ch. 214, § 30, authorizes a private person to make an arrest when:
 "(1) a felony has been or is being committed and the person making the arrest has probably cause to believe that the arrested person is guilty thereof; or
 "(2) any crime, other than a traffic infraction, has been or is being committed by the arrested person in the view of the person making the arrest." (Emphasis added.)
Thus in response to your question, in relation to traffic infractions the policy does not "limit the broader statutory authority otherwise vested in conservation officers," but rather impermissibly expands such officers authority beyond statutory limits. In relation to "traffic laws" which are not traffic infractions (such as driving under the influence), the policy is flawed because it is premised on the erroneous assumption that conservation officers have authority as law enforcement officers to arrest persons instead of the more limited arrest authority granted to private persons.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Camille Nohe Assistant Attorney General
CJS:JLM:CN:jm