## Case No. 5,355.

### The GEORGIANA.

[1 Lowell, 91.] [1]

District Court, D. Massachusetts. May, 1866.

SALVAGE—DERELICT—DEGREE OF PERIL—COMPENSATION—DISTRIBUTION.

1. The doctrine is now well established in courts of admiralty that the salvors of derelict property stand on the same footing as other salvors, although in estimating the peril from which they have rescued the goods, the fact that they were derelict on the high seas is of great importance, because the chance of recovery by the owner is very small.

2. This peril depends more on the actual situation of the saved property, than on the intent with which it was abandoned.

3. Where a vessel of small value was found derelict on the high seas and towed into port by a vessel of much larger value with a valuable cargo on board, without great personal risk or labor, two-fifths of the gross proceeds of sale were awarded as salvage, together with some necessary expenses and costs.

[Cited in The Anna, Case No. 398.]

4. Distribution of this salvage between the owners and the men.

In admiralty.

R. R. Bishop, for libellants.

G. E. Betton, for claimants.

LOWELL, District Judge. The brig America of —— tons burden, and valued at about twenty thousand dollars, with a cargo the cost of which is not given, and manned by ten persons including officers, in the course of her voyage from Halifax to Boston, on the twenty-ninth day of March, 1866, at about seventy miles from Cape Ann, namely, in latitude 42° 37′, and longitude 68° 58′, saw the schooner Georgiana drifting with her sails loose and dragging overboard, and her main-boom swinging. The appearance of the schooner was such as to attract attention, and the master of the brig went some two miles out of his direct course to speak her, and found, as he expected, that there was no person on board. He lay to in a convenient position and sent his mate with five men to board the schooner. The roughness of the sea made it impossible to approach her with safety on the weather side, and this with the danger from the sails and other hamper which were dragging on the lee side, rendered the attempt to board her at all one of considerable difficulty and some danger, and one which succeeded only after persevering efforts, continued for about an hour and a half. Upon boarding the schooner it was found that she was in ballast and had apparently broken from her moorings; for both anchors were gone and both chains parted; her foresail was so much damaged as to be of no service; but it appears by the evidence that she was otherwise staunch and in good

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

order. The mainsail and jib were at once hoisted, a hawser was passed on board from the brig, and she was towed for some two hours, when the line parted, and she was again taken in tow and so continued until some time in the following night, about twelve hours in all, when they had nearly reached Cape Ann, and the wind having died away, the master was afraid of the vessels fouling each other, and cast her off, and both vessels proceeded to Boston, but no longer in company. The value of the schooner, as proved by the marshal's sale, is nineteen hundred and fifty dollars, which is considerably less than the libellants supposed it to be. It is said that the owners were the purchasers, and no complaint is made that the sale, which was by agreement of parties, was not a fair one, and I must assume it as the basis of my judgment so far as value is concerned.

The answer, which is by an agent, upon information and belief, raises no issue except as to the value of the property saved, and the amount which ought to be awarded to the salvors, and as incidental to this, whether the schooner was derelict. It alleges that she was anchored in a small harbor on the coast of Maine, and in a gale the chains parted, and the captain and crew took to their boats and went on shore, intending, however, to return and retake the vessel, and that they made some efforts in this behalf. No evidence was offered by the claimants in support of their allegations; but taking the answer to be true, it is plain that the schooner was derelict in the ordinary sense of the law of salvage, that is to say, she was left and found under circumstances which show that the possession of her by her crew was not continuous, and that any hope they may have entertained of recovering her must have had very slight foundation in fact. This question of derelict vessels and goods at sea has been much discussed, and there are many cases in the books upon the subject. I understand the modern doctrine to be that there must be not only a hope of recovery, which indeed the law will always presume, but some reasonable prospect that the hope may be realized, to rebut the presumption arising from the condition in which the goods are found. Where the peril is such as to force an abandonment of the ship, the mere intention to return and recover her, if possible, will not prevent her being considered derelict. L'Esperance, 1 Dod. 46; The Coromandel, Swab. 205; The Sarah Bell, 4 Notes of Cas. 144; Rowe v. The Brig [Case No. 12,093]; The Boston [Id. 1,673].

The question is not quite so important now as it was formerly thought to be, because the finders in such cases are no longer considered to be entitled prima facie to one-half or any other fixed proportion of the property; but the courts are inclined to fix the reward rather by a consideration of the danger, labor, value, and other circumstances which govern in ordinary cases of salvage service. Post v. Jones, 19 How. [60 U. S.] 150. It is very rare indeed that more than one-half the value of the property saved is awarded.

There are two circumstances, however, which are usually found to exist in cases of vessels or other goods found abandoned at sea, which entitle the salvors to favorable consideration. One is, that the owner's chance of recovering his property is commonly very slight; and the other, that the salvors have not the aid or directions of the owner or master in relation to the measures to be adopted for its preservation. Besides these circumstances, there is not much in the present case to call for a very large reward. Though there was some danger in boarding the vessel, yet from the time she was in possession of the salvors their task was neither difficult nor dangerous. She was navigable and was not leaky, and the taking her in tow appears to have been more a matter of convenience than absolute necessity. The total detention of the brig's voyage cannot have exceeded two or three hours, for she appears to have made Cape Ann in about twelve hours from the time of taking the schooner in tow, which shows a rate of sailing of about six miles an hour. Indeed the master estimated the retardation, if it may be so called, of his brig by the tow at only about a knot an hour, which gives rather less than two hours as the total delay. A good deal has been said concerning the insurance of the brig having been vitiated by the deviation, and this is a point which has been thought by many learned judges to enhance the owner's claim. See The Boston, above cited. On the other hand it was said in argument, that the latest doctrine in England is to consider all vessels in such cases as uninsured. The Deveron, 1 W. Rob. Adm. 180, and unpublished cases cited 2 Pritch. Dig. 835; Salvage, 690. If a general rule is to be adopted, it is certainly more in accordance with the truth to assume all vessels to be insured than the contrary. And I should assume in the absence of evidence, that the vessel and cargo are put to some additional risk by the deviation. In case of cargo not belonging to the owners of the vessel, it cannot be doubted that the latter may be incurring a great risk by such a deviation, because they become insurers, and it might often be the duty of the master not to take such a risk where the comparative value of the derelict property to that under his charge is small. In the present case the question is not very important, because the theoretical risk by deviation, was slight, the vessel being near the end of her voyage. It was not worth a large sum to insure her for twenty-four hours. So far as any actual risk was encountered by the brig, that is always a subject of consideration by the court, and whether that risk is taken by the owners or the underwriters is of no consequence. That a valuable vessel has been endangered

by a towage or other salvage service, is as proper an element in the computation of the reward, as the number of the salvors and the risks and hardships to which they have been exposed. The owners of the derelict property cannot object to this, because the question with them was whether their goods should be saved by risking this valuable instrument or not saved at all. It is not for them to complain of the means by which their property has been rescued. Taking into view the comparatively small value of the schooner, and that the risk and hardship of the salvors were not considerable, although the peril from which they saved the property was great, I have thought right to award two-fifths of the gross amount, or seven hundred and eighty dollars, to be divided as follows: to the owners of the brig, one-third, $260; to the master, one-sixth, $130; to the mate, one-twelfth, $65; to the second mate and crew, five-twelfths, to be divided in proportion to their wages, $325.

The bill for expenses, $47.50, appears to be proper, and this and the taxable costs are to be allowed out of the remaining three-fifths.