GARDNER et al. v. NINETY–NINE GOLD COINS et al.

(District Court, D. Massachusetts.   March 21, 1899.)

No. 970.

**1. SALVAGE—MONEY RECOVERED FROM BODY FOUND AT SEA—SALVAGE AWARD.**

A fishing schooner on her voyage from Gloucester to the fishing grounds on August 17, 1898, found floating in the water the body of a man who had been a passenger on the Bourgogne, sunk in collision on July 4th.  Upon the body was found a wallet containing coins and bank notes to the value of $1,050.  The body was immediately buried by sinking in the usual manner, and the money was brought back and paid into a court of admiralty.  The man's name was not discovered.  The salvage involved no danger to vessel or crew.  *Held*, that in view of the probability that the money would not otherwise have been recovered, and of the meritorious action of the officers and crew in bringing it into court, when they might readily have kept and divided it among themselves, one-half the amount would be awarded for the salvage services, to be divided between the owners, master, and crew.[1]

**2. PUBLIC ADMINISTRATOR—RIGHT TO PROPERTY OF UNKNOWN DECEDENT—FUND IN COURT OF ADMIRALTY.**

A number of gold coins and bank notes were taken by the crew of a fishing schooner from the body of a man found floating in the sea, and who had been a passenger on a steamship sunk in collision some weeks before.  The money was paid into the registry of an admiralty court, and an award for salvage services was made, and paid therefrom to the owners and crew of the schooner.  The body was buried at sea, and after the lapse of more than two years remained unidentified, except for a name in a receipt found thereon, and no relatives or heirs were known.  *Held*, that the public administrator of the county in which the admiralty court was located, who had been granted letters of administration on the estate of the decedent by the probate court, pursuant to the statutes of the state, was entitled to possession of the remainder of the fund in preference to the salvors, claiming as the finders of lost goods, whose owner was unknown, or to the United States, claiming as successor to the prerogative rights of the king of England.

In Admiralty.   Suit to recover for salvage services and to determine rights in the fund remaining in court.

John J. Flaherty, for libelants.

Theodore H. Tyndale, public administrator, pro se.

William H. Garland and John H. Casey, Asst. U. S. Attys.

LOWELL, District Judge.   The libelants are the owners, master, and crew of the fishing schooner William H. Cross, which upon her voyage from Gloucester to the fishing grounds on August 17, 1898, found floating in the water the body of a man who had been a passenger on the Bourgogne, sunk in a collision on July 4th.   Upon the body of this man was found a wallet containing coins and bank notes to the value of $1,050.   The body was immediately buried by sinking in the usual manner, and the man's name has not yet been discovered.   The only question arising in this case concerns the amount of salvage.   It is admitted with entire frankness by the libelants that the salvage involved no danger whatsoever to the schooner or to its crew, and that the delay caused by it was insignificant.   On the other hand, it is very unlikely that the property would have been

[1] Salvage awards in federal courts, see note to The Lamington, 30 C. C. A. 280.

recovered at all had it not been recovered as it was by the libelants; and it would have been easy for the crew, after its recovery, to divide it among themselves without bringing it into court. This is a case of the salvage of a derelict in the greatest danger of complete loss,— a salvage involving no danger or expense, but offering a great and unusual temptation to appropriate the entire property to the use of the salvors. I think I am justified in giving considerable weight to this last-mentioned element of the case. Upon the whole, I award to the salvors half the value of the property salved; one-third of the salvage to be paid to the owners of the vessel, one-third to the master, and one-third to the crew. See The Georgiana, 1 Lowell, 91, Fed. Cas. No. 5,355. The master's share is made somewhat larger than the allowance in other cases, because it appears that some members of the crew did propose to divide up the whole property on the spot, and that the master was put to some difficulty and annoyance in resisting their proposals. In spite of this, especially as the particular members of the crew in fault have not been pointed out, I do not think it proper to deprive them of all share in the salvage.

Decree accordingly.

(October 18, 1901.)

LOWELL, District Judge. The fund remaining in the registry of the court after the payment of the salvage decreed more than two years ago has three claimants: (1) The salvors, claiming the fund as the finders of lost or abandoned goods whose owner is unknown, and as having "such a property as will enable to keep it against all but the original owner." Armory v. Delamirie, 1 Strange, 505; Russell v. Proceeds of Forty Bales of Cotton, Fed. Cas. No. 12,154. (2) The United States, claiming as successor to the prerogative rights of the king of England. Peabody v. Proceeds of Twenty-Eight Bags of Cotton, Fed. Cas. No. 10,869. (3) The public administrator of Suffolk county, who has taken out letters of administration, pursuant to Pub. St. Mass. c. 131, § 2, upon the estate of the man on whom the coins were found. In the petition and in the letters the description of this man is that given by the salvors, and a name of doubtful spelling, written in a receipt found upon his person, is assigned to him. The evidence that this man was the owner of the property is convincing.

The salvors and the United States both admit that their rights, whatever they may be, are subordinate to the claim of the original owner of the property, if a claim by that owner be made in this proceeding. Does the public administrator so represent the original owner that his intervening claim is effectually the claim of that owner? That an administrator ordinarily represents his intestate's rights of property is plain. The administrator of the original owner of the jewel in Armory v. Delamirie could have recovered the same from the chimney sweep as effectually as could the owner himself if living. In what respect does the public administrator in this case differ from an ordinary administrator? He is appointed by the same court, and has substantially the same duties. That he holds a commission from the governor, which entitles him to apply for administration in a case like this, does not make him the less an administra-

tor after his appointment by the probate court. The rights and duties of an administrator do not depend upon his relationship to the intestate or upon the existence of next of kin, but upon his appointment by a court of competent jurisdiction. It is urged against the administrator's claim: First, that his appointment was not authorized by the statute, because the fund is not in Suffolk county; second, that this court, having got possession of the fund, should provide for its final distribution; and, third, that the claim of the public administrator here is really no more than a claim by the commonwealth of Massachusetts to property in which it has no right. But, if the fund is not in Suffolk county, it is hard to perceive where else it is. If the next of kin of the deceased owner should appear, it is admitted on all hands that, by some proceeding or other, they should obtain the fund. Yet this court would not undertake to determine their distributive shares. It would require them to take out administration, original or ancillary, in the probate court of this county, and would then pay over the fund to the administrator for distribution among them according to the order of the probate court. In that case the letters of administration would be undoubtedly valid, and yet the fund would be in Suffolk county no more than it is in the case at bar. Compare Pub. St. c. 131, § 2, with chapter 156, § 2. Pinney v. McGregory, 102 Mass. 186. It is true that by virtue of Pub. St. Mass. c. 131, §§ 7, 12, 14, the fund, if paid to the public administrator, may ultimately become the property of the commonwealth; but this might happen if it was paid to any other administrator. Pub. St. c. 135, § 3. The condition under which the commonwealth is entitled to estate in the hands of a public administrator and in the hands of any other administrator is substantially the same, viz. that no next of kin can be found. If the deceased owner had been domiciled in Massachusetts, and was without next of kin, his estate would certainly pass to the commonwealth, yet his administrator would be entitled to a fund like this. In the case at bar it is quite possible that the deceased owner's next of kin, who probably exist, will be discovered by the public administrator. If a certainty that the estate will eventually pass to the commonwealth, as in the case just put, does not defeat the claim of the administrator, his claim cannot be defeated by a mere possibility that the commonwealth will take. In a sense, it may doubtless be said that the deceased owner has not been identified. His name is in doubt, and his body was buried at sea. But, in the last analysis, identification always differs in degree, and not in kind. That a man's name is in doubt, that he is known by different names, will not prevent administration upon his estate; and this court is informed that the practice here is not uncommon to administer upon the estates of persons whose names are wholly unknown. Should a guest staying in a hotel foreign to his domicile die suddenly in his room, and should his name and relatives be undiscoverable, the money found on his person would hardly become the property of the chimney-sweep or of the chambermaid who should first lay hands upon it. Doubtless extreme cases may be put. If treasure were dug up in a field, so placed that it had been manifestly the property of the unknown man with whose body it had been buried two centuries before, the public administrator might not be entitled to the prop-

erty, even upon taking out letters upon the estate of the skeleton. To an illustration like this it should be answered: First, that it is not the case at bar; and, second, that in the case supposed the probate court would hardly issue the requisite letters. In Russell v. Proceeds of Forty Bales of Cotton, and in Peabody v. Proceeds of Twenty-Eight Bags of Cotton, nothing was known of the owners, and probably they were alive.

It was further urged that not the public administrator, but the commissioner of wrecks, was here entitled to the goods, by virtue of Pub. St. Mass. c. 97. But the commissioner has made no claim, and nothing in the chapter cited forbids the owner to take his wrecked property if he can find it. See sections 2 and 8. The salvage hitherto allowed by this court has amply satisfied the claims which might be made before the commissioner under section 7.

The court has been referred to two cases in the circuit court for this district, unreported and without written opinion, in which that court refused to deliver to the public administrator of a deceased seaman his effects and wages. But congress has undertaken to regulate the disposition of such wages and effects. The circuit court is not bound to deliver them to the administrator or to the person ordinarily entitled, and need not make any provision for creditors, unless the value exceeds $300, which it did not in the cases referred to. Rev. St. § 4544.

As the administrator in this case represents the estate and the rights of the undoubted owner, the fund in court must be paid over to him. The decree may contain an express saving of any right which either the salvors or the United States have against the fund while in the hands of the administrator or in the treasury of the commonwealth.