## Case No. 4,434.
### The EMBLEM.
[2 Ware (Dav. 61) 68.][2]

District Court, D. Maine. July 27, 1840.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reported by Edward H. Daveis, Esq.]

Mr. Haines, for libellant.
Longfellow & Fessenden, for claimants.

WARE, District Judge. This is a case of salvage of no extraordinary merit, if the time employed, and the labor and risk, incurred in the service be alone taken into consideration. It is not pretended that, in saving the property, the salvors were occupied more than four or five hours, nor that the service was attended with any peculiar hazard. But there are other circumstances in the case, which will incline the court to look upon it with a more favorable eye. It was connected with the saving of several lives which, but for the timely aid of these salvors must inevitably have been sacrificed. Now a court of admiralty has no authority to allow a reward merely for the saving of life. That. as is observed by Lord Stowell. "must be left to the bounty of individuals. But when it is connected with the preservation of property, then the court can take notice of it, and it is always willing to join that to the animus displayed in the first instance." The Aid, 1 Hagg. Adm. 83. See, also, The Two Catherines [Case No. 14,288]. The rate of salvage rests entirely on the discretion of the court, but it is a judicial discretion, governed by fixed and certain principles. The first principle is, that it shall be liberal, and not confined to a mere quantum meruit for the service actually performed, but such as will operate as an inducement to men of daring and adventurous courage, to engage in these perilous enterprises. It would be surprising, when courts are thus liberal in remunerating hardy enterprise, displayed in the saving of property, if they were entirely deaf to its merits, where the same dangers are braved in saving life. But this is a charge which cannot justly be imputed to courts of admiralty. It has been stated by high authority, that stopping, for the purpose of saving the lives of shipwrecked persons, is a meritorious duty, and is not such a deviation as will discharge underwriters. The Boston [Case No. 1,673]. Now, though the court is not authorized to grant a reward directly, for the discharge of this common duty of humanity, yet when it has incidentally led to the saving of property, it will not exclude it wholly from its consideration, in determining the amount of salvage upon the property.

The motive, for the deviation in this case, seems to have been the saving of life. When the survivors upon the wreck were safely lodged in the salvor's vessel, she continued on her course, and it was not until after the wind lulled, and the danger of entering upon the wreck was diminished, that Capt. Hatch returned to ascertain what property could be saved; so that the acquiring any reward for themselves appears to have been, in the minds of the salvors, an after or secondary consideration. I am clearly of the opinion, that in this case, looking at the risk, time, and labor of the service only, the remuneration ought to be liberal, and that the humanity of the salvors, although it cannot be the object of a direct reward, in the way of salvage, is not to be forgotten in determining the rate of salvage upon the property. Not that the court has the authority to take one man's property and appropriate it, as a reward for saving another man's life; but that the general principles of humanity and of enlarged policy, applicable to these cases, where all, who are interested in adventures upon the high seas, are liable to become in turn the salvors and the saved, require that the circumstance of the preservation of life ought not to be wholly kept out of sight, in measuring the reward. Sure I am, that no one, who has once been exposed to the horrors which these persons suffered, will ever object to the principle. But, in the present case, there are some circumstances which, I am free to say, have struck my mind with considerable surprise. They are, that this vessel should have lain, for four days, in one of the most frequented parts of the American seas, with vessels continually passing her, some of them almost within hailing distance, and when they were in full view of this unhappy company, who were lying thus lashed and dying upon the wreck, and no one came to their relief until more than half of their number were released from their sufferings, by death, and consigned to a watery grave. It is a fact, which would seem to be incredible, if

it did not rest upon indubitable and unsuspected proof. If this fact is to be taken as a just measure of the humanity of the persons who frequent those seas, I know not but it may be the part, not only of humanity, but of worldly wisdom, to let them understand that sometimes even in godliness there is gain, and to tempt them by the allurements of pecuniary profit, if they can be led by no other, to acts of humanity and mercy.

The counsel for the claimants have fairly allowed full credit to the humanity of Capt. Hatch and his crew, standing as it does in such striking contrast with that of others in the neighborhood of those seas. They have not contended against a reasonable allowance of salvage, upon the particular circumstances of the case. The principal question, which has been discussed, is, whether any salvage can, upon the principles of law, be allowed upon the bills of exchange and drafts, which were saved in the same trunk which contained the specie. The argument for the claimant is, that a bill of exchange is not property, in any proper sense of the word, but merely the evidence of a debt, and that if lost, the debt is not cancelled, but the creditor can recover it, upon the original consideration for which the bill was given; and therefore, if saved from a shipwrecked vessel, it is no more subject to salvage than a deed of real estate, or any other muniment of title, which may be useful to the owners, but is of no value in the hands of any other person. On the other side it is argued, that although a bill of exchange is not strictly property, it is a security, and although the loss of the security does not cancel the debt, it renders the recovery of it difficult, and may, from the inability of the creditor to procure sufficient proof, render a recovery impossible, and thus by the saving of the security, the salvors have rendered an essential benefit to the owner, capable of being valued in money. For this benefit, it is contended, they are entitled to a remuneration. The fact which gives force to this argument, is, that the whole set of each of the bills was saved, all being found together in the trunk of Mr. Leland, the supercargo.

That the owners of these bills have derived some benefit from the rescue of them from destruction, cannot be denied. It has furnished them with the proof that no bill, of any of the sets, is now outstanding in circulation, in the hands of a bona fide holder, and has thus removed one of the difficulties they would have to encounter, in a suit for the debt, upon the original consideration, and if the finding and saving of property in this way furnished the ground of a personal action against the owner, quasi ex contractu, I see no insuperable obstacle to a decree against the owners of a suitable remuneration to the salvors. But, by the common law, the finder of property which has been casually lost has no legal claim against the owner to anything in the nature of a reward or compensation for finding. All that he can pretend to is the repayment of the actual expenses he has incurred in preserving it, and upon the payment of this, the owner is entitled to receive his property free from all other charge. Kent. Comm. 256. The finder of a check or promissory note or other chose in action acquires no property in the note and has no right to demand the payment of it; and if a promiser pays it, after notice that it came into the possession of the holder by finding, he would not be protected against a demand by the owner. McLaughlin v. Waite, 5 Wend. 404. And in this rule, the common agrees with the civil law. The finder, of what belongs to another, acquires no property in the thing found, unless the owner had renounced his property in it, and left it derelict as bona vacantia, but he was bound to restore it to the owner. Dig. 6, 1, 67; Pothier, Traité de la Propriété, No. 66.

This is the law if the thing is lost on the land. But the maritime law, from considerations of public policy, has established a different rule for goods which are lost at sea. A person who preserves goods which are lost, or in danger of being lost, by the fortunes of the sea, is entitled to a reward for that service. But what is the nature of this right? Is it a personal claim, or right of action, to recover the reward against the owner of the thing saved, or is it merely a right to proceed against the thing itself to obtain his satisfaction? This is a material question which arises in the consideration of this case. That the salvor has a perfect right to proceed against the goods saved, admits of no doubt. By saving them he acquires a sort of proprietary interest in the goods, a jus in re, and a complete possessory right, against all persons claiming an interest in them, to retain them until his compensation is paid, or until he can proceed to enforce his right against them by due course of law. And it is the familiar practice of courts of admiralty, in all the maritime courts of Europe, to give him a remedy by process in rem. The goods, upon filing a libel by the salvor, are taken into the custody of the court, and ordered to be sold for the payment of the salvage. The right of dominion, or the absolute property, in the mean time, remains in the original owner. But he is under no obligation to assert his right, by intervening with a claim. He may abandon his property if he pleases, and if he does so, and declines to make himself a party to the suit, no decree can be made against him. In certain cases, it is true, the admiralty has jurisdiction, in cases of salvage, to proceed in personam. If the owner wishes to receive his goods, before proceedings at law are instituted and the salvor delivers them to him, a personal libel may be maintained for the salvage. Such were the cases of The Trelawney and The Hope. 3 C. Rob. Adm. 215, 216; 4 C. Rob. Adm. 223.

But this is solely on the ground of his possession of the property. All the authorities speak of the right of the salvor as attaching to the thing, and not as the foundation of any personal claim against the owner, independent of the goods saved. The customs of the sea, as we have them collected in all the old maritime codes, treat the salvor's claim in the same way as a right against the property saved, and the usual mode of compensating the service is by the allowance of a certain portion of the goods saved or of their value. The service is nowhere spoken of as constituting the ground of a personal claim against the owners.

Upon these principles, admitting that the salvors have performed a meritorious and valuable service to the owners of these bills, by rescuing them from destruction, it is difficult to see in what mode the court can give them a remedy. It can only act on the thing and pronounce the bills subject to salvage, and it can execute its decree only by an order of sale. If they are sold, what right would be transferred to the purchaser? Could he recover from the persons whose names are on the bills the sums for which they were drawn? The difficulties, it appears to me, would be insuperable. Suppose the title deeds of an estate were saved from a wrecked vessel, it would not be pretended that the possession of the deeds carried with it any title to the land, or any interest in it. Or, suppose the paper saved were a will, and it were pronounced subject to salvage, would a sale, under a decree of a court of admiralty, transfer to the purchaser any interest in the legacies? Or, if the papers saved were settlements, receipts, or acquittances, these papers might be of great value to the owner, but would be of no use to any one else. If any salvage is due on such articles, it can only be recovered in a personal suit against the owners. But the saving of property, from the perils of the sea, creates no personal obligation against the owner, independent of his interest in the property saved.

. But it is contended for the libellant, that the papers having been saved and brought into court, the court may prescribe the terms upon which they may be redelivered to the owner, and may hold them impounded until the condition be performed. When goods are brought into the custody of the law by process in rem, a claimant cannot, it is true, recover the possession of them but by an order of the court. But when he is entitled to the possession, the court is bound to pass the order. The authority of the court to retain the possession is founded on that of the libellant, and the foundation of his right is a supposed lien upon them, for the payment of salvage. But if they are not subject to salvage, then his right fails. The case falls under the rule of the common law, and the owner is entitled to receive them upon the payment of the actual expenses which the finder has incurred in preserving them, and

it will be the duty of the court to order them to be restored to the owner upon proper proof of his title.

My opinion is, that nothing can be allowed upon the bills of exchange and drafts; but I think that there are peculiar reasons for allowing a liberal salvage on the property saved. And I allow it the more willingly, as, from the evidence now before the court, it appears that the specie belongs to the same persons who are entitled to the bills. As the salvors have performed a meritorious service, in rescuing from destruction the evidence of property, for which, upon the principles of the maritime law, no remuneration can be allowed, this fact may be justly remembered, in the allowance of salvage on those articles which are legally subject to that burden. The whole amount of the property saved will not probably exceed six hundred dollars. I shall allow three hundred and eighty dollars for salvage, and charge the expenses upon the residue. This will be divided in the proportion of two-fifths to the owners of the salvor ship, and three-fifths to the master and crew; to be divided into thirteen shares:

Four shares to Capt. Hatch, the master.
Two shares to Lewis West, the mate.
One share to James Cole, mariner.
One share to Charles Dennison, "
One share to George Morris, "
One share to Daniel Nash, "
One share to Stephen Chase, "
One share to Wm. Robinson, "
One share to Isaac Johnson, steward.