In re SWAN'S ESTATE.
HENDEE v. STATE TAX COMMISSION et al.

No. 5926.  Decided June 9, 1938.  (79 P. 2d 999.)

Rehearing denied November 14, 1938.

410

*Walter M. Critchlow*, of Salt Lake City, for appellant.

*Ned Warnock*, of Salt Lake City, for respondents.

HANSON, Justice.

This is a proceeding by the State Tax Commission of Utah under Sec. 80-12-14, R. S. Utah 1933, for the appointment of an administrator to collect and pay over to it an inheritance of transfer tax claimed to be due the State of Utah upon assets lately held in joint tenancy by the decedent and her daughter, Theo Swan Hendee, with rights of survivorship. From a judgment of the District Court establishing a tax of $2,350.31 and 8 per cent interest thereon from the date of death of the decedent, the surviving joint tenant appeals.

The material facts are without dispute. The petition listed sundry mining stocks (hereinafter referred to as "stocks")

and certain improved real estate in Blocks 53 and 57, respectively, Plat "A," Salt Lake City Survey (herein referred to as Item 1 and Item 2), as assets of the estate of Blanch Swan, deceased, held in joint tenancy with Theo Swan Hendee, with rights of survivorship, of a value in excess of $10,000, and prayed that an administrator be appointed to collect the tax from the assets and pay it over to the respondent Tax Commission.

The court appointed Coleman D. Creel special administrator, who caused the assets to be appraised at $16,545.00 for the stocks, and Item 1 of the realty at $30,000 and Item 2 at $60,550.00, or a total of $107,095.00, and thereon the court, after allowing the statutory deductions, fixed an inheritance or transfer tax of $2,350.31 and decreed its payment from the assets.

On the filing of the petition and of the later amended petition, the clerk set a date for hearing and posted notices of the hearings, but the proof of mailing thereof shows, the names of no persons to whom they were mailed. However, to each petition the appellant, Theo Swan Hendee, appeared and demurred and moved dismissal of the petitions on grounds of (1) insufficient facts; (2) the bar of limitations; and (3) defect of parties plaintiff. These were overruled and Mrs. Hendee answered.

The substantial averments of both the petitions, demurrers and answer are carried into the court's findings and conclusions, which may be summarized as follows: (1) Said Blanch Swan died in California on February 16, 1931, and her daughter, Theo Swan Hendee, was then, ever since has been, and is now a nonresident of Utah, a resident of California, and not present in Utah for a period of one year since her mother's death and before the petition herein was filed, which was on February 23, 1935. (2) That the stocks and real estate were at the time of Mrs. Swan's death held and owned by her and by appellant Mrs. Hendee as joint tenants with right of survivorship, and have been reported, listed, and appraised at the above figures after crediting the

allowable deductions. (3) That there has been no previous administration or fixing of the tax on said assets. But that on May 25, 1931, an action was begun by said Theo Swan Hendee in the District Court to terminate said joint tenancy in said property and assets, and that therein the court decreed said joint tenancy terminated. R. S. Utah 1933, Sec. 104-59-1. (4) Ever since the death of said Blanch Swan, said Theo Swan Hendee has been, and is now, the owner of all of said real and personal property, except that in 1932 the said Item 1 of the realty was transferred and conveyed to Theo Swan Hendee and Grant Swan in joint tenancy. (5) All the debts and funeral expenses of Blanch Swan, deceased, except the claimed inheritance tax, have been fully paid by said Theo Swan Hendee. (6) That the transfers and conveyances by which said Blanch Swan and Theo Swan Hendee became the owners as joint tenants of all the said real and personal property were made prior to, and not within three years of, the death of Blanch Swan; and they were not made or caused to be made in contemplation of her death, or to take effect in possession or enjoyment at or after her death. That the consideration for Item 2 of the real property was furnished wholly, and the income therefrom enjoyed wholly, by the said Theo Swan Hendee. And that the consideration for the stocks and the realty in Item 1 was furnished equally and the income therefrom enjoyed equally by said Theo Swan Hendee and Blanch Swan. (7) that during February, 1931, shortly after Mrs. Swan's death, the Attorney General of Utah was notified and his deputy was present when the safety deposit box, in a Salt Lake City bank, owned by Blanch Swan and Theo Swan Hendee jointly, was opened and that then and there a complete inventory of all property held in joint tenancy by said named parties was furnished to said deputy Attorney General.

From said findings of fact, the court drew conclusions and rendered the decree or order to which appellant objects. There are several distinct issues of law presented for deci-

sion. We are met at the threshold with appellant's plea of the statute of limitations. Comp. Laws Utah 1917, Sec. 6468; R. S. Utah 1933, Sec. 104-2-26, limiting the time for an action to enforce a statutory liability to one year from the time the cause of action arises. We dispose of that question first, since, if well taken, a decision of the other questions becomes unnecessary. In this connection, Sec. 104-2-31, R. S. 1933, provides that, "The limitations prescribed in this article shall apply to actions brought in the name of, or for the benefit of the state in the same manner as to actions by private parties." And Sec. 104-2-47 provides that the word "action," as used in the chapter, is to be construed as including a special proceeding of a civil nature, wherever necessary.

Our attention has not been called to any previous case in this State where this precise question has been ruled upon. In the recent case of *Attorney General of Utah* v. *Pomeroy*, 93 Utah 426, 73 P. 2d 1277, 114 A. L. R. 726, the question arose, and was discussed somewhat but not decided. We are satisfied that the present proceeding is a special one of a civil nature, and that the plaintiff's claim is based upon a statutory liability arising upon Sec. 80-12-2, R. S. 1933, which imposes the tax claimed. The claim is certainly not based upon a contract, or a tort, and if not a statutory liability, it is difficult to discover the ground of liability. The bar of the statute (Sec. 104-2-26, supra) has been applied in the case of other statutory obligations than taxes in several cases. *Box Elder County* v. *Harding*, 83 Utah 386, 28 P. 2d 601, *Rodriquez* v. *Industrial Comm.*, 86 Utah 273, 43 P. 2d 189, *Lowe* v. *Industrial Comm.*, 87 Utah 413, 49 P. 2d 948; *Peterson* v. *Sorensen*, 91 Utah 507, 65 P. 2d 12. Similar statutes to those of Utah above cited have in other states been construed in harmony with the conclusions we have reached in this case, and we see no reason to doubt their applicability under our statute, either in principle or upon authority. We refer to the cases of *State* v. *Yellow Jacket S. M. Co.*, 14 Nev. 220; *City of San*

*Diego* v. *Higgins,* 115 Cal. 170, 46 P. 923; *Board of Com'rs of Custer County* v. *Story,* 26 Mont. 517, 69 P. 56; *Lemhi County* v. *Boise Live Stock Loan Co.,* 47 Idaho 712, 278 P. 214; *Woods* v. *Hyde,* 64 Cal. App. 433, 222 P. 168; *State* v. *Certain Lands, etc.,* 40 Minn. 512, 42 N. W. 473; *State* v. *Chicago & N. W. Ry. Co.,* 132 Wis. 345, 112 N. W. 515; *Pine County* v. *Lambert,* 57 Minn. 203, 58 N. W. 990; *Bristol* v. *Washington County,* 177 U. S. 133, 20 S. Ct. 585, 44 L. Ed. 701. And on a related question, see *Murry* v. *Monter,* 90 Utah 105, 60 P. 2d 960, 963.

Such statutes apply to proceedings to collect inheritance taxes. *Chambers* v. *Gallagher,* 177 Cal. 704, 171 P. 931; *State ex rel. Gallet* v. *Naylor,* 50 Idaho 113, 294 P. 333. The circumstance that the statute makes taxes a lien on property does not affect the question. Both secured and unsecured claims have potential existence even after the remedy to enforce them is barred. They may be revived by a new promise to pay and otherwise.

It may be noted that this Sec. 104-2-26, R. S. 1933, was amended in 1937 (Laws of Utah 1937, Chap. 138), changing the time from one year to three years. But this was after the bar had become effective in this case, and so cannot affect our decision. *Ireland* v. *Mackintosh,* 22 Utah 296, 61 P. 901; *Chambers* v. *Gallagher,* supra.

Respondent contends that appellant's nonresidence and absence from the State tolled the statute of limitations, and cites the case of *Riley* v. *Howard,* 193 Cal. 522, 226 P. 393. The case is not in point. That was a suit in personam by the taxing authority to obtain a personal judgment for the tax against the Howard heirs, and the jurisdiction could be exercised only upon personal service of a summons within the state of the forum. The absence of some of the defendants prevented and delayed the suit against them until their return to the state. At bar, the jurisdiction invoked is one in rem against asserted assets of the estate of Blanch Swan, deceased, not dependent for its exercise on personal service of a summons upon appellant.

It was initiated, properly so, by the filing by a creditor of the deceased person's estate, of a petition for letters of administration thereon, so that the creditor's claim might be presented to the administrator for payment. Such a proceeding is essentially one in rem. Jurisdiction is acquired, not by the issuance and service of a summons under the Code, Title 104, Chap. 5, R. S. 1933, but by publication or posting and mailing of notice under Sec. 102-4-8, R. S. 1933. The filing of the petition for letters is the beginning of the action or proceeding contemplated by Title 80, Chap. 12, and the time for so proceeding had run. The facts in the case at bar are unfavorable to application of the rule in *Riley* v. *Howard,* supra. The bulk of the assets here is real estate and the state of the record title not easily concealed. In addition, the findings show that within a very short time, a matter of days, after Mrs. Swan's death, the Attorney General was notified and his deputy was present at the opening of the safety deposit box and was furnished a full list of all assets held in joint tenancy by Mrs. Swan and appellant. All the debts of Mrs. Swan were paid and Mrs. Hendee was not obligated to begin administration or to invoke the fixing of an inheritance tax. *State ex rel. Gallet* v. *Naylor,* supra. The findings further show that very soon thereafter, and on May 25, 1931, appellant, Mrs. Hendee, began a statutory action in the District Court under R. S. 1933, Sec. 104-59-1, to terminate the joint tenancy in all of the assets mentioned, and the court after due process of law decreed said joint tenancy ended and the sole title was vested in appellant. That also was a proceeding in rem, and the right to so proceed rested on as high a statutory authority as that resorted to by respondents in this case to collect the tax.

In view that appellant had paid all claims, debts, etc., against her mother's estate, there was no occasion for her to take out letters of administration, merely to invite or facilitate the imposition of a tax which it would be her purpose and intention to resist. She gave the State's taxing authorities notice and every opportunity to assert its claims

if they intended to make such claims, and she was not obligated to take over their official functions in that behalf. There is no merit in the suggestion of concealment or inattention on appellant's part to the just claims, rights, or interest of the State.

The procedure resorted to by the State Tax Commission in this case is, by its petition rested on R. S. 1933, Sec. 80-12-2, and is a step in the exercise of probate jurisdiction, which is limited, special and statutory, not plenary. ▆▆ It is a creditor's remedy for the collection of his debt. It is analogous to that exercised by a court of equity in aid of a general creditor's bill, when a receiver is appointed to take possession of and sell assets of a nonresident debtor and pay debts under orders of the court. It is a virtual attachment of assets to pay debts. Jurisdiction in such case is acquired by posting and mailing of notice. In either or any such case, the statute of limitations begins to run from the time the remedy selected is open to the creditor.

It would needlessly prolong this opinion to discuss and analyze all of the contentions and citations of the respondent in detail. The conclusions we have announced dispose of them all.

The judgment of the District Court of Salt Lake County is reversed and the record remanded with instructions to dismiss respondents' petition. Costs to appellant.

MOFFAT and LARSON, JJ., concur.

WOLFE, Justice (dissenting).

I dissent. I think the liability to pay the tax in this case was a personal one. The so-called action in rem was purely an ancillary process to collect the personal debt out of property which the law made the measure of the tax and a resort for its collection. Therefore, the action against the property being in aid of the collection of a personal liability could not be barred until the statute of limitations had run against the personal liability. I shall briefly develop these three propositions.

First, the tax was imposed on the person and not against property. The tax is an excise tax—a tax on a privilege. *Maxwell* v. *Bugbee*, 250 U. S. 525, 40 S. Ct. 2, 63 L. Ed. 1124, where, quoting from *Magoun* v. *Illinois Trust & Sav. Bank*, 170 U. S. 283, 18 S. Ct. 594, 42 L. Ed. 1037, it was said (page 6):

"'(1) An inheritance tax is not one on property, but one on the succession. (2) The right to take property by devise or descent is the creature of the law, and not a natural right—a privilege, and therefore the authority which confers it may impose conditions upon it.'" *Knowlton* v. *Moore*, 178 U. S. 41, 20 S. Ct. 747, 44 L. Ed. 969; Gleason and Otis, "Inheritance Taxation," (4th Ed.) (1925) p. 247; *State Tax Comm.* v. *Backman*, 88 Utah 424, 55 P. 2d 171.

The tax being an excise tax—a tax for exercising a privilege—the tax must ordinarily be one owing from the person who enjoys the privilege. Thus, a license tax for the privilege of selling beer is one due from the person who is granted the privilege of selling beer and not a tax on the beer. In the case of one permitted to transmit or receive property, the tax-imposing authority is fortunately in the position of having property by which to measure the tax and out of which the tax may be collected. But the fact that the particular sort of privilege enjoyed involves the giving or receiving of property does not the less mean that it is still a privilege enjoyed by a person and that the person enjoying the privilege and not the privilege or property, which is the subject of the privilege, is the thing taxed. In *State Tax Comm.* v. *Backman*, supra, it was said (page 175):

"The specific language of the old law quoted above [before the 1933 revision] is sufficient to justify the court in holding that the nature of the tax was one imposed on the right to receive the estate * * *".

As far as survivorship is concerned, the survivor—the recipient—is still the one personally liable for the tax. Sec. 80-12-31, R. S. 1933.

Thus, it sufficiently appears that the inheritance tax is an excise tax; that an excise tax is a personal tax although collectible out of property; and that in the case of a joint tenancy or tenancy by the entirety, it is a personal tax against the survivor, albeit that the value of the property may limit the amount of the tax.

The one-year statute, Sec. 6468, Comp. Laws 1917 (now Sec. 104-2-26, Subdiv. 1, R. S. 1933), runs against the State, Sec. 6475, Comp. Laws 1917 (now Sec. 104-2-31, R. S. 1933). The time from which it begins to run is, in this case, not material, for it is admitted that the survivor, Theo Swan Hendee, was out of the State during the year whether it begins to run from the death or from one year from the death (when the tax is payable, Sec. 80-12-23, R. S. 1933) or from the date when an estate is finally distributed. Out of what has been above stated emerge the fundamental propositions that the tax is a personal liability against Theo Swan Hendee and that as to such personal liability the statute has not run.

Has it run as to the remedy to collect it out of the property? The majority opinion speaks of the action in causing an administrator to be appointed for the collection of the tax as a proceeding in rem. Let me concede this. When the administrator is appointed he can proceed against the property for the collection of the tax when the taxpayer—the person liable for the tax—is out of the State or perhaps when he is in the State. In fact, when the taxpayer is out of the State he can do no other. I further concede that such procedure, whether it be in the probate court, if such is proper, or by some separate suit against the property, is also an action in rem. In making this concession, I desire, however, to indicate what is so meant in this sense by an action in rem. There are very few pure actions in rem; that is, actions where the thing and no other is liable. The old theory of deodand involved a pure conception of an action in rem. The animal or thing itself was the cause of the death of a human being and should be confiscated. In admiralty law

there are still cases where the vessel itself and none other is libeled for the damage caused. This was a libel in rem. The vessel was liable in rem. *The Sabine,* 101 U. S. 384, 25 L. Ed. 982; *The Emblem,* Fed. Cas. No. 4,434, 2 Ware 68. Such cases present pure actions in rem. The prize court procedure presents another instance. But many of the so-called actions in rem are proceedings against property to collect a debt or a tax secured by the property to which recourse may be had by contract or by law for the tax or debt. They are actions to foreclose a lien and a lien ordinarily implies a personal debt or exaction which the lien secures. A mortgage foreclosure against the property mortgaged when the mortgagor or owner of the property is not amenable to service is such an action. An action personally against the mortgagor asking to sell the property and apply the proceeds to the debt and for judgment for the deficiency is in this sense a mixed action in personam and in rem. In fact, whenever the court in giving a remedy must act on a status or a thing, it is denominated an action in rem or partially in rem. But in all such cases there is an obligation of some person to pay a debt which is, if he fails to pay, collectible out of the property or the situation is such that the court can by judgment or decree, act directly in regard to the property. Even in actions for specific performance where the court must operate on a person to compel that person to act in relation to property, the action which relates to property is in personam and not in rem. The court operates on the property in order to grant the remedy which some party is by law or contract entitled to in respect to the property.

In decedents' estates we have more nearly a pure action in rem. In that case, the court distributes the property—in a sense operates on it—not in order to enforce someone's obligation to another in respect to property, but in order to distribute the thing itself to those entitled to it. But where the Tax Commission or a creditor is forced to apply for administration in order to subject the property to the payment of taxes on which it is a lien or to the payment of debts, the

action in this sense is one in rem for the purpose of enforcing some personal obligation to pay the tax or the debt, just as in a mortgage foreclosure. In the instant case, the proceedings in probate were all for the purpose of bringing a suit in rem to collect the taxes out of the property. It was the first step in the process of enforcing a pecuniary obligation of Theo Swan Hendee out of her property which property was within the jurisdiction of the State and subject to be sold to pay her obligations.

If I am correct in the first proposition that this tax was the personal obligation of Mrs. Hendee, perhaps limited by the value of the property, and in the second proposition that the so-called proceedings in rem were simply an aid to collecting this debt out of property which stood for its payment, it then seems incontestable in logical sequence that the opportunity to resort to the property for the tax or debt is and must be for as long a time as the tax collecting authorities could collect from Mrs. Hendee personally, provided the rights of third parties did not intervene. It seems to me very illogical to hold that there may be a personal obligation by one residing outside the state to pay taxes against whom the statute has not run, but that that same person may come in the state and defeat by pleading the statute an action to apply her property within the state which has been by law expressly made a resort for her personal liability. If that is true, the state may have twenty years to collect the tax from her personally but one year to apply to the property which the law provided might be resorted to for the debt. When the debtor may not take refuge in the statute from the enforcement of a right, he may not take refuge in the statute in order to protect his property, which, by law or contract, has been made a resort for the debt, from being applied to the debt. I think the statute which bars recourse to the property is commensurate and keeps pace with the statute which bars the collection of the personal liability. When the statute is tolled as to the personal liability, it is tolled as to the action for its collection out of

the property which secures the debt. When it has run as to the personal liability, it has run as regards action to enforce the debt out of the property which secures the payment of the personal liability.

The following cases hold that where the mortgagor is out of the state, the statute is likewise tolled as to the action to foreclose the property: *Love* v. *West*, 169 N. C. 13, 84 S. E. 1048, and cases therein cited; *Watt* v. *Wright*, 66 Cal. 202, 5 P. 91; *Emory* v. *Keighan*, 94 Ill. 543; *Morrell* v. *Ingle*, 23 Kan. 32; *Fielding* v. *Iler*, 39 Cal. App. 559, 179 P. 519; *Whalley* v. *Eldridge*, 24 Minn. 358; *Owens* v. *Hornthal*, 156 N. C. 19, 72 S. E. 5.

The case of *State* v. *Certain Lands in Redwood County*, 40 Minn. 512, 42 N. W. 473, illustrates the difference between an action in rem purely and a proceeding in rem to collect a debt for which the res was made a resort for its collection. That case held that a "liability created by statute" included an action purely against the property for taxes since the property's liability for the tax was created by statute. This is sound and logical. But where there is a personal liability and the property stands for the payment of such liability and is not itself the debtor, the statute of limitations which controls the personal liability must control the action against the property. Thus, where a statute made the vessel liable, I see no reason why the action against the vessel should not be brought within the year. This illustrates nicely the difference between the application of the statute to actions purely in rem and those which are for the purpose of applying property to a debt such as mortgage foreclosure actions, attachment suits, etc. *Boucofski* v. *Jacobsen*, 36 Utah 165, 104 P. 117, 26 L. R. A., N. S., 898, is not to the contrary. There, the statute running in favor of a junior claimant or lienholder was not tolled by the absence of the mortgagor as to an action in relation to the property as to the junior claimant. In another form this appears in the case of *Redondo Improvement Co.* v. *O'Shaughnessy*, 168

Cal. 323, 143 P. 538, where it was held that the statute would not be tolled as to a mortgagor who had left the state after conveying the property to another within the state, there then being available the only party necessary to foreclose. But where both mortgagor and his grantee owner absented themselves from the state, the statute was tolled as to foreclosure against the property, all parties necessary and proper to foreclosure being absent. The real reason for thus holding, I think, lies in the fact that where third parties are involved, their rights must by the statute be set at rest.

I must conclude that the majority opinion is in error in holding that the statute of limitations relating to the bringing of an action for a liability created by statute was not tolled in its application to a proceeding to collect the tax out of property on which a lien for the liability was created when the statute was tolled as to an action for personal liability for the tax.

In the instant case, the State, through its Attorney General, had notice of the joint tenancy. But in other cases the survivor may not be so honest as in the present case. I see nothing which prevents the making of a joint tenancy in real or personal property, and after the death of one, the survivor absenting himself from the state for the statutory period and thus preventing collection of the tax against the property. The survivor would automatically succeed to the whole of the property. It would be most unlikely that in the case of realty or personalty not left in a safety deposit box but in the private custody of one of the joint tenants, that the state, except by accident, would discover the survivorship. I think the holding of the majority opinion opens the door to fraud.

There are other points in this case which, if investigated, might still require us to hold for the appellant but it would be a work of supererogation for a dissentient to resolve them for the reason that a dissenting opinion dies a-borning. I dissent, therefore, from the conclusions of the court re-

garding Sec. 104-2-26, Subdiv. 1, R. S. Utah 1933, as offering a defense to Mrs. Hendee in this case, and express no opinion as to whether the actual result reached is proper.

FOLLAND, Chief Justice (dissenting).

I concur in the dissenting opinion of Mr. Justice WOLFE.