I dissent. I think the liability to pay the tax in this case was a personal one. The so-called action in rem was purely an ancillary process to collect the personal debt out of property which the law made the measure of the tax and a resort for its collection. Therefore, the action against the property being in aid of the collection of a personal liability could not be barred until the statute of limitations had run against the personal liability. I shall briefly develop these three propositions. *Page 418 
First, the tax was imposed on the person and not against property. The tax is an excise tax — a tax on a privilege.Maxwell v. Bugbee, 250 U.S. 525, 40 S.Ct. 2, 63 L.Ed. 1124, where, quoting from Magoun v. Illinois Trust Sav. Bank,170 U.S. 283, 18 S.Ct. 594, 42 L.Ed. 1037, it was said (page 6):
"`(1) An inheritance tax is not one on property, but one on the succession. (2) The right to take property by devise or descent is the creature of the law, and not a natural right — a privilege, and therefore the authority which confers it may impose conditions upon it.'" Knowlton v. Moore, 178 U.S. 41,20 S.Ct. 747, 44 L.Ed. 969; Gleason and Otis, "Inheritance Taxation," (4th Ed.) (1925) p. 247; State Tax Comm. v.Backman, 88 Utah 424, 55 P.2d 171.
The tax being an excise tax — a tax for exercising a privilege — the tax must ordinarily be one owing from the person who enjoys the privilege. Thus, a license tax for the privilege of selling beer is one due from the person who is granted the privilege of selling beer and not a tax on the beer. In the case of one permitted to transmit or receive property, the tax-imposing authority is fortunately in the position of having property by which to measure the tax and out of which the tax may be collected. But the fact that the particular sort of privilege enjoyed involves the giving or receiving of property does not the less mean that it is still a privilege enjoyed by a person and that the person enjoying the privilege and not the privilege or property, which is the subject of the privilege, is the thing taxed. In State Tax Comm. v. Backman, supra, it was said (page 175):
"The specific language of the old law quoted above [before the 1933 revision] is sufficient to justify the court in holding that the nature of the tax was one imposed on the right to receive the estate * * *".
As far as survivorship is concerned, the survivor — the recipient — is still the one personally liable for the tax. Sec. 80-12-31, R.S. 1933. *Page 419 
Thus, it sufficiently appears that the inheritance tax is an excise tax; that an excise tax is a personal tax although collectible out of property; and that in the case of a joint tenancy or tenancy by the entirety, it is a personal tax against the survivor, albeit that the value of the property may limit the amount of the tax.
The one-year statute, Sec. 6468, Comp. Laws 1917 (now Sec. 104-2-26, Subdiv. 1, R.S. 1933), runs against the State, Sec. 6475, Comp. Laws 1917 (now Sec. 104-2-31, R.S. 1933). The time from which it begins to run is, in this case, not material, for it is admitted that the survivor, Theo Swan Hendee, was out of the State during the year whether it begins to run from the death or from one year from the death (when the tax is payable, Sec. 80-12-23, R.S. 1933) or from the date when an estate is finally distributed. Out of what has been above stated emerge the fundamental propositions that the tax is a personal liability against Theo Swan Hendee and that as to such personal liability the statute has not run.
Has it run as to the remedy to collect it out of the property? The majority opinion speaks of the action in causing an administrator to be appointed for the collection of the tax as a proceeding in rem. Let me concede this. When the administrator is appointed he can proceed against the property for the collection of the tax when the taxpayer — the person liable for the tax — is out of the State or perhaps when he is in the State. In fact, when the taxpayer is out of the State he can do no other. I further concede that such procedure, whether it be in the probate court, if such is proper, or by some separate suit against the property, is also an action in rem. In making this concession, I desire, however, to indicate what is so meant in this sense by an action in rem. There are very few pure actions in rem; that is, actions where the thing and no other is liable. The old theory of deodand involved a pure conception of an action in rem. The animal or thing itself was the cause of the death of a human being and should be confiscated. In admiralty law *Page 420 
there are still cases where the vessel itself and none other is libeled for the damage caused. This was a libel in rem. The vessel was liable in rem. The Sabine, 101 U.S. 384,25 L.Ed. 982; The Emblem, Fed. Cas. No. 4,434, 2 Ware 68. Such cases present pure actions in rem. The prize court procedure presents another instance. But many of the so-called actions in rem are proceedings against property to collect a debt or a tax secured by the property to which recourse may be had by contract or by law for the tax or debt. They are actions to foreclose a lien and a lien ordinarily implies a personal debt or exaction which the lien secures. A mortgage foreclosure against the property mortgaged when the mortgagor or owner of the property is not amenable to service is such an action. An action personally against the mortgagor asking to sell the property and apply the proceeds to the debt and for judgment for the deficiency is in this sense a mixed action in personam and in rem. In fact, whenever the court in giving a remedy must act on a status or a thing, it is denominated an action in rem or partially in rem. But in all such cases there is an obligation of some person to pay a debt which is, if he fails to pay, collectible out of the property or the situation is such that the court can by judgment or decree, act directly in regard to the property. Even in actions for specific performance where the court must operate on a person to compel that person to act in relation to property, the action which relates to property is in personam and not in rem. The court operates on the property in order to grant the remedy which some party is by law or contract entitled to in respect to the property.
In decedents' estates we have more nearly a pure action in rem. In that case, the court distributes the property — in a sense operates on it — not in order to enforce someone's obligation to another in respect to property, but in order to distribute the thing itself to those entitled to it. But where the Tax Commission or a creditor is forced to apply for administration in order to subject the property to the payment of taxes on which it is a lien or to the payment of debts, the *Page 421 
action in this sense is one in rem for the purpose of enforcing some personal obligation to pay the tax or the debt, just as in a mortgage foreclosure. In the instant case, the proceedings in probate were all for the purpose of bringing a suit in rem to collect the taxes out of the property. It was the first step in the process of enforcing a pecuniary obligation of Theo Swan Hendee out of her property which property was within the jurisdiction of the State and subject to be sold to pay her obligations.
If I am correct in the first proposition that this tax was the personal obligation of Mrs. Hendee, perhaps limited by the value of the property, and in the second proposition that the so-called proceedings in rem were simply an aid to collecting this debt out of property which stood for its payment, it then seems incontestable in logical sequence that the opportunity to resort to the property for the tax or debt is and must be for as long a time as the tax collecting authorities could collect from Mrs. Hendee personally, provided the rights of third parties did not intervene. It seems to me very illogical to hold that there may be a personal obligation by one residing outside the state to pay taxes against whom the statute has not run, but that that same person may come in the state and defeat by pleading the statute an action to apply her property within the state which has been by law expressly made a resort for her personal liability. If that is true, the state may have twenty years to collect the tax from her personally but one year to apply to the property which the law provided might be resorted to for the debt. When the debtor may not take refuge in the statute from the enforcement of a right, he may not take refuge in the statute in order to protect his property, which, by law or contract, has been made a resort for the debt, from being applied to the debt. I think the statute which bars recourse to the property is commensurate and keeps pace with the statute which bars the collection of the personal liability. When the statute is tolled as to the personal liability, it is tolled as to the action for its collection out of *Page 422 
the property which secures the debt. When it has run as to the personal liability, it has run as regards action to enforce the debt out of the property which secures the payment of the personal liability.
The following cases hold that where the mortgagor is out of the state, the statute is likewise tolled as to the action to foreclose the property: Love v. West, 169 N.C. 13,84 S.E. 1048, and cases therein cited; Watt v. Wright, 66 Cal. 202,5 P. 91; Emory v. Keighan, 94 Ill. 543; Morrell v. Ingle,23 Kan. 32; Fielding v. Iler, 39 Cal.App. 559, 179 P. 519;Whalley v. Eldridge, 24 Minn. 358; Owens v. Hornthal,156 N.C. 19, 72 S.E. 5.
The case of State v. Certain Lands in Redwood County,40 Minn. 512, 42 N.W. 473, illustrates the difference between an action in rem purely and a proceeding in rem to collect a debt for which the res was made a resort for its collection. That case held that a "liability created by statute" included an action purely against the property for taxes since the property's liability for the tax was created by statute. This is sound and logical. But where there is a personal liability and the property stands for the payment of such liability and is not itself the debtor, the statute of limitations which controls the personal liability must control the action against the property. Thus, where a statute made the vessel liable, I see no reason why the action against the vessel should not be brought within the year. This illustrates nicely the difference between the application of the statute to actions purely in rem and those which are for the purpose of applying property to a debt such as mortgage foreclosure actions, attachment suits, etc. Boucofski v.Jacobsen, 36 Utah 165, 104 P. 117, 26 L.R.A., N.S., 898, is not to the contrary. There, the statute running in favor of a junior claimant or lienholder was not tolled by the absence of the mortgagor as to an action in relation to the property as to the junior claimant. In another form this appears in the case ofRedondo Improvement Co. v. O'Shaughnessy, *Page 423 168 Cal. 323, 143 P. 538, where it was held that the statute would not be tolled as to a mortgagor who had left the state after conveying the property to another within the state, there then being available the only party necessary to foreclose. But where both mortgagor and his grantee owner absented themselves from the state, the statute was tolled as to foreclosure against the property, all parties necessary and proper to foreclosure being absent. The real reason for thus holding, I think, lies in the fact that where third parties are involved, their rights must by the statute be set at rest.
I must conclude that the majority opinion is in error in holding that the statute of limitations relating to the bringing of an action for a liability created by statute was not tolled in its application to a proceeding to collect the tax out of property on which a lien for the liability was created when the statute was tolled as to an action for personal liability for the tax.
In the instant case, the State, through its Attorney General, had notice of the joint tenancy. But in other cases the survivor may not be so honest as in the present case. I see nothing which prevents the making of a joint tenancy in real or personal property, and after the death of one, the survivor absenting himself from the state for the statutory period and thus preventing collection of the tax against the property. The survivor would automatically succeed to the whole of the property. It would be most unlikely that in the case of realty or personalty not left in a safety deposit box but in the private custody of one of the joint tenants, that the state, except by accident, would discover the survivorship. I think the holding of the majority opinion opens the door to fraud.
There are other points in this case which, if investigated, might still require us to hold for the appellant but it would be a work of supererogation for a dissentient to resolve them for the reason that a dissenting opinion dies a-borning. I dissent, therefore, from the conclusions of the court regarding *Page 424 
Sec. 104-2-26, Subdiv. 1, R.S. Utah 1933, as offering a defense to Mrs. Hendee in this case, and express no opinion as to whether the actual result reached is proper.