**BROERE v. TWO THOUSAND ONE HUNDRED THIRTY-THREE DOLLARS et al.**

**No. 18417.**

District Court, E. D. New York.

June 13, 1947.

Townley, Chanbers & Clare and Walter E. Warner, Jr. all of New York City, for Robert E. Amott as Adm'r of Estate of Charles A. Amott, deceased, appearing specially on this motion.

Edward Goodell, of New York City, for libelant, opposed.

KENNEDY, District Judge.

This libel in rem asserts a claim for salvage. One Robert A. Amott, administrator of the goods and chattels of Charles A. Amott, deceased, intervenes, and moves upon a "special appearance" to dismiss the libel on several grounds. In support of the application, he files affidavits, and libelant replies to these. Of course, this procedure is irregular. But, as will presently appear, that irregularity is not important. The operative facts are not the subject of any dispute. And even were this not so, it is possible to treat the motion as an exception grounded on the contention that, even if true, the allegations of the libel do not together constitute a claim within the admiralty jurisdiction of the court.

On January 3, 1947, Charles A. Amott, who lived in Bayshore, Long Island, commenced a voyage in the waters of the Great South Bay. He was operating a flat bottom boat, 18 feet long and 6 feet in beam, powered by a small gasoline motor. In his pocket he had in United States currency the sum of $2,133. On the same day Amott's boat capsized and he was drowned. More than three months later, April 17, 1947, libelant, while navigating Great South Bay in the vicinity of Fire Island, sighted Amott's body afloat. Libelant attempted to haul the body into his boat but, being unable to do so, he attached a rope to it and towed it to Bayshore where he turned it over to the Police Department of the State of New York. The Police Department, in turn, delivered the currency found on Amott's body to the respondent Grover A. Silliman, Coroner of Suffolk County. It is upon this basis that libelant claims an award of salvage, as the libel makes clear, despite its rather crude form.

Really the attack on the libel is based upon the broad ground that money found on a body floating in navigable waters cannot be the subject of salvage.[1] The intervening claimant has standing thus to challenge the libel, because, as administrator of the goods and chattels of the decedent, he will be entitled to all or part of the monies found.

The intervenor relies heavily upon the case of Cope v. Vallette Dry Dock Co., 1887, 119 U.S. 625, 7 S.Ct. 336, 30 L.Ed. 501. There the supposed subject of salvage was a fixed floating dry dock. After taking proof, the District Court for the Eastern

---

[1] The "motion to dismiss" is in five subdivisions: (1) that the libel "fails to state a proper cause of action"; (2) that there is no proper prayer for relief; (3) that there is no proper allegation that the "subject of the libel" was in navigable waters; (4) that the monies are not "the proper subject of salvage and are not properly identified as such"; and (5) that the writ issued to the United States Marshal and pursuant to which the monies have been attached, ought to be vacated. Enough has been said, I think, to indicate that these grounds taken together sum up to the contention that a claim for salvage will not lie against monies found on a dead body in navigable waters. The waters of Great South Bay are clearly within the admiralty jurisdiction.

District of Louisiana, D. C., 1882, 10 F. 142, dismissed the libel upon a plea to the jurisdiction. The Circuit Court found as a conclusion of law that there was no jurisdiction, and affirmed the District Court's decree, C.C.La., 1883, 16 F. 924. The Supreme Court, in turn, affirmed the Circuit Court, Mr. Justice Bradley writing a brief opinion. But that very opinion recognizes that the furniture or cargo of a ship or vessel, which come clearly under the heading of wreck, flotsam, jetsam, ligan, or derelict, may be the subject of salvage. The decree of dismissal in the Cope case was affirmed, because the *structure* salved, being fixed, was not maritime in its nature, i. e., it was not used for the purpose of navigation. The decision, therefore, does not touch the question whether money found on a dead body, which probably comes within the category of derelict, may be the basis for an award to the person responsible for saving it.[2] There is, at least, one case holding squarely that salvage is proper in such a case. Gardner v. Ninety-Nine Gold Coins, D.C.D.Mass., 1889, 111 F. 552. Judge Lowell, after writing a short opinion, made an allowance to the owners, master, and crew of a fishing schooner, who had found the floating body of a passenger drowned when S. S. Bourgoone was sunk in collision. On the body there was a wallet containing coins and bank notes to the value of $1,050. Judge Lowell calls the case one of salvage of a derelict in the greatest danger of complete loss. And the fact that there was no danger or expense did not deprive the salvors of an award, because offsetting this circumstance was the unusual temptation to appropriate the entire property, something which is obviously true in the case at bar. In support of his exception, the intervenor argues that this case is to be distinguished, because the body in the Gardner case was unidentified, whereas here identity has been established and letters of administration granted on the decedent's estate. But that can hardly be called a controlling fact; Judge Lowell, in the Gardner case, directed that what remained after the execution of his decree should be turned over to the Public Administrator. The intervenor also makes much of a passage in Robinson's Handbook of Admiralty Law in the United States (1939 Ed., p. 712). While recognizing the fact that a box or cask lost overboard from a ship falls into the category of marine property, Professor Robinson takes the position that a train wrecked on the Florida Keys so that some of the cargo is cast into navigable waters would not create a cause of salvage. But the supposititious case last mentioned is not this case, because here Amott, according to the allegations of the libel, clearly embarked on a maritime venture, whereas the shipper of goods on a railroad does not.

A case nearly in point here is The Emblem, D.C.D.Me., 1840, Fed. Cas. No. 4,-434, Dav. 61 2 Ware 68. There, a vessel bound for Havana had been wrecked. The crew and passengers were compelled to lash themselves to the wreck, in order that they might not be washed overboard. Many ships passed, and as time went on, one after another of the crew and pasengers drowned, leaving but few survivors. These survivors were taken on board a ship called the Charles Miller, which proceeded on her way immediately after the rescue, but turned back two hours later when the wind had subsided. On boarding the wreck for the second time, the crew of the Charles Miller saved some trunks, and also certain bags containing specie, bills of exchange, and drafts. Judge Ware, recognizing that no award of salvage could be made for the saving of life as such, nevertheless felt impelled generously to remunerate the owners, master, and crew of the salvor ship

[2] I call attention to the general statement made by Mr. Justice Bradley (Cope v. Vallette Dry Dock Co., supra, 119 U.S. 625, 629, 7 S.Ct. 336, 337, 30 L. Ed. 501): "If we search through all the books, from the Rules of Oleron to the present time, we shall find that salvage is only spoken of in relation to ships and vessels and their cargoes, *or those things which have been committed to or lost in the sea or its branches, or other public navigable waters, and have been found and rescued.*" (Italics mine.)

Certainly the property found in the case at bar fits into this general statement. The fact that the money was actually on a dead body makes little difference, for both the body and the money were lost from a vessel in navigable waters.

out of the specie. Unfortunately, Judge Ware's opinion does not disclose whether that specie belonged in whole or in part to any of the persons who were drowned, for in his case counsel for the claimants recognized that some award for salvage was proper at all events. But surely there is no basis for making a distinction between specie found on a floating body, and specie saved from a wreck which later turns out to have been the property of drowned passengers.[3] In Hollingsworth v. Seventy Doubloons & Three Small Pieces of Gold, D.C.E.D.Pa., 1820, Fed. Cas. No. 6,620, the crew of the ship Jane, while becalmed on a voyage from Lisbon to Philadelphia, noticed a wooden sea-chest floating on the ocean. It was supposed that it was empty, and it was broken up, the remnants being placed in the ship's long boat. On arrival at Philadelphia, it was found that in the crevices of the remnants of the sea-chest were the doubloons and pieces of gold which became the subjects of the salvage claim. The claim was allowed by Judge Peters. The salvors urge that they had a finder's title to all of the property; Judge Peters rejected this, citing a case decided by Mr. Justice Johnson at Circuit (Fisher v. The Sybile, C.C.D.S.C., 1816, Fed. Cas. No. 4,824, affirmed 4 Wheat. 98, 17 U.S. 98, 4 L.Ed. 522). Most of Judge Peters' opinion is taken up with discussion of the claim that there is room for conjecture in the case of anything floating in the sea that it has been abandoned, so as to give the salvors a property interest in the whole of it. But the root of the decision, so far as it concerns salvage, is almost exactly the same as in the Gardner case: "The only reason for any comparative advantage to such salvors, [i. e., of money, jewels, etc.] would be to encourage the disclosure of the finding, where concealment might be so easy, by a combination to secrete it, and thus, taking human propensities as we too often observe them, to reward overt acts of integrity, where covert malversation might have been, and, no doubt, often is, practised."

It is probably unwise to attempt any general statement concerning the character of the property which may be the subject of salvage. For example, I am not sure that the following statement from Maltby v. Steam Derrick Boat, D.C.E.D.Va., 1879, Fed. Cas. No. 9,000, does not have its exceptions: "But I think the test as to what is the subject of salvage is no longer, whether it is a vessel engaged in commerce or its cargo or furniture, but whether the thing saved is a movable thing, possessing the attributes of property, susceptible of being lost and saved in places within the local jurisdiction of the admiralty."

 Certainly, there are movable things within this test which cannot be the subject of salvage, like the United States mails (The Merchant, D.C.S.D.Fla.1851, Fed. Cas. No. 9,435) or bills of exchange. The Emblem, D.C.D.Me., 1840, Fed. Cas. No. 4,434. But this is because neither the mails, nor bills of exchange could ever be a proper subject for a proceeding in rem, i. e., they could not be sold and a moiety of the avails given to the salvors for the reason that no purchaser could get a title. The money in the case at bar, however, certainly meets the test suggested in the cases last mentioned. Neither on principle nor authority can I see any reason for depriving this libelant of the fruits of the risk he assumed and of the work he did, however trifling these may be, principally because of his honesty.[4]

The exception to the libel is overruled.

---

[3] Judge Ware (The Emblem, D.C.D.Me., 1840, Fed.Cas.No.4,434), after discussing the law of "things" lost on land, says: "But the maritime law, from considerations of public policy, has established a different rule for goods which are lost at sea. A person who preserves goods which are lost, or in danger of being lost, by the fortunes of the sea, is entitled to a reward for that service."

[4] "Salvage, in its simple character, is the service which those who recover property from loss or danger at sea render to the owners, with the responsibility of making restitution, and with a lien for their reward". The Thetis, 3 Hagg. Adm. 14, 48 quoted by Mr. Justice Bradley in Cope v. Vallette Dry Dock Co., supra, 119 U.S. 625, 628, 7 S.Ct. 336, 337, 30 L.Ed. 501.