### BROERE v. TWO THOUSAND ONE HUNDRED THIRTY-THREE DOLLARS et al.
### No. 18417.

District Court, E. D. New York.
June 1, 1948.

Edward Goodell, of New York City, for libellant.

Townley, Chambers & Clare, by Walter E. Warner, Jr., all of New York City, for Robert E. Amott, administrator of estate of Charles A. Amott, deceased, claimant.

GALSTON, District Judge.

This libel seeks to recover part of a sum of $2,133 which was found on the person of Charles A. Amott after the body had been found in the waters of Great South Bay by the libellant and towed to Bayshore, Suffolk County, Long Island.

The sufficiency of the libel was challenged by the claimant in a motion made before trial. Judge Kennedy of this court, in an opinion filed June 13, 1947, 72 F.Supp. 115, overruled the exception to the libel, and that decision is accepted as the law of the case.

It appears that the decedent was drowned on or about January 3, 1947, while sailing in Great South Bay. He is survived by his widow and three children, one of whom, Robert E. Amott, is the duly appointed administrator of the decedent's estate.

The libellant is a fisherman. He testified that on April 17, 1947, he went out in his fishing boat as usual, leaving the dock at about seven o'clock in the morning. From the dock he went out into the bay, and he said that a terrific gale of wind was blowing from the north east. The strength of the wind, as evidenced by a report of the United States Coast Guard, and recorded at the Fire Island L. B. Station, was never greater than "4" (Beaufort scale). It would appear, therefore, that the wind on that day was not higher than fifteen miles an hour. The tide was high, so said the libellant. The previous day, he said, there had been a gale blowing from the east which brought the water up high, and he found the water rough. He observed the body in the water and after some effort succeeded in working a rope under the arms so that he could tow the body to shore. He said that there was no other boat in the vicinity, and he proceeded back to Bayshore with the body in tow. It took him about an hour and a quarter to reach Bayshore. At Bayshore he had the police notified and also the Fire Department, and they succeeded in getting the body on shore. The police found a wallet on the body containing the sum of $2,133. The money was delivered by the Police Department to the respondent as Coroner of Suffolk County, and the libellant seeks a suitable reward for the services which he rendered.

The determination of this question is not an easy one, for there are no exact precedents, and so not much help is afforded by the cases cited. However, general principles are set forth in the Blackwell case, 10 Wall. 1, 77 U.S. 1, 19 L.Ed. 870, where it was stated:

"Courts of admiralty usually consider the following circumstances as the main ingredients in determining the amount of the reward to be decreed for a salvage service: (1) The labor expended by the salvors in rendering the salvage service. (2) The promptitude, skill and energy displayed in rendering the service and saving the property. (3) The value of the property employed by the salvors in rendering the service, and the danger to which such property was exposed; (4) The risk incurred by the salvors in securing the property from the impending peril. (5) The value of the property saved. (6) The degree of danger from which the property was rescued."

" * * * Compensation as salvage is not viewed by the admiralty courts merely as pay, on the principle of a quantum meruit, or as a remuneration Pro Opere et Labore, but as a reward given for perilous services, voluntarily rendered, and as an inducement to seamen and others to embark in such undertakings to save life and property.

"Public policy encourages the hardy and adventurous mariner to engage in these laborious and sometimes dangerous enterprises, and with a view to withdraw from him every temptation to embezzlement and dishonesty, the law allows him in case he is successful, a liberal compensation."

Applying those principles to the matter in hand, we find that the labor expended by the libellant in point of time amounted to about three and a half hours. Secondly, the libellant did demonstrate skill in bringing in the body. The property employed by the salvor was his boat, estimated to be worth about $3,000, but I doubt whether the boat was exposed to any danger. The risk involved I think was not very great. The value of the property saved was, of course, $2,133. Lastly, the degree of danger from which the property was rescued was not extraordinarily great.

Having in mind that the essential characteristic of the award must be deemed "a reward given for perilous services," the libellant may have an award for $400, inclusive of interest and costs.

Concurrently herewith appropriate findings of fact and conclusions of law will be filed.